NO. 07-00-0278-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 14, 2001

_____

IN THE INTEREST OF ASHLEY CABALLERO, A CHILD

_____

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 15289; HONORABLE KELLY G. MOORE, JUDGE

_____

Before BOYD, C.J., and QUINN and REAVIS, JJ.

In this appeal, appellant Omene Montano III, challenges a trial court judgment terminating his parental rights to his daughter Ashley Caballero. In doing so, he presents seven issues which, he contends, show error in the trial court's judgment. In the first six of those issues, appellant contends the evidence was both legally and factually insufficient to support the termination. In the seventh issue, he challenges the denial of his motion for new trial on the ground that he was prejudiced by evidence introduced against Melissa

Caballero, Ashley's mother. Disagreeing that reversal is required, we affirm the judgment of the trial court.

On September 3, 1998, and in response to a complaint that six-year-old Ashley was the victim of neglect, employees of the Texas Department of Protective and Regulatory Services (the Department) went to the home of Ashley and her mother, Melissa. Upon arriving, they found very little food in the house and little cooperation from Melissa. The workers made appointments to meet with Melissa, but she did not keep those appointments. With her consent, Melissa was given a blood test, which revealed her use of cocaine. When asked with whom Ashley could stay, Melissa suggested Ashley's grandparents. However, because Ashley claimed to have been mistreated by those grandparents, the Department took custody of her. Within a week after taking custody, the Department filed this proceeding seeking to terminate the parental rights of both appellant and Melissa.

In its amended petition, the Department alleged seven acts or omissions as grounds for termination of parental rights under section 161.001(1) of Texas Family Code.[1] As alleged in the petition, those acts were that appellant had 1) left the child without providing adequate support for at least six months, 2) knowingly placed or allowed the child to stay in conditions which endangered the well-being of the child, 3) engaged in conduct or placed the child with persons who engaged in conduct which endangered the child, 4) failed to support the child in accordance with his ability for a period of one year, 5) relinquished his

---

[1]Subsequent references are to the Family Code unless otherwise noted.

parental rights, 6) constructively abandoned the child, and 7) engaged in criminal conduct resulting in his incarceration and inability to care for the child for a period of not less than two years.

The termination proceedings against both parents were tried together. Evidence was introduced about Melissa's drug use. Evidence was also presented that in December 1996, appellant pled guilty to the offense of robbery and was granted shock probation after his service of 180 days confinement. Throughout 1997, appellant was either confined or participating in correctional programs in Austin and Midland. His probation was revoked as a result of his being charged with driving while intoxicated in May 1998 in Midland. As a result of that revocation, he was sentenced to eight years confinement in the Institutional Division of the Texas Department of Criminal Justice.

After trial in the termination proceeding, the trial court terminated the parental rights of both parents. In response to a request for findings of fact and conclusions of law, the trial court found each of the Department's allegations to be true with the sole exception that it did not find appellant had relinquished his parental rights. In pursuing this appeal, and in his first six issues, appellant avers that the evidence was legally and factually insufficient to support any of the termination grounds found by the trial court. His seventh issue assigns error to the denial of his motion for new trial alleging he was prejudiced by evidence introduced against Melissa.

3

As we have noted, the statute governing termination of parental rights is section 161.001 of the Texas Family Code. It provides that parental rights may be terminated if the trial court finds, by clear and convincing evidence, that the person has engaged in one or more enumerated acts or omissions and that the termination is in the best interest of the child. Clear and convincing evidence is "that measure or degree of proof which produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). This is an intermediate standard falling between the preponderance of evidence standard of ordinary civil proceedings and the "beyond a reasonable doubt" standard of criminal proceedings. *Id.* Because the termination of parental rights is a matter of constitutional dimensions, this heightened burden is necessary. *Id.* at 846.

Our review of appellant's legal sufficiency challenges requires us to consider only the evidence supporting the trial court's finding, disregard evidence to the contrary and uphold the finding if there is any probative evidence to support it. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). The parties differ on whether the "clear and convincing evidence" standard required to establish termination alters our standard of review. We continue to adhere to the view that the standard of appellate review does not change when the burden to establish a fact is by clear and convincing evidence. *See In re M.D.S.*, 1 S.W.3d 190, 197 (Tex.App.--Amarillo 1999, no pet.). Nevertheless, in applying that standard, the weight of evidence necessary to support a verdict must be higher. *In re D.T.*, 34 S.W.3d 625, 632 (Tex.App.--Fort Worth 2000, no pet. h.). Therefore, in reviewing

4

factual sufficiency challenges, we are to consider all the evidence to determine whether reaching a "firm belief or conviction" that the allegation was true is contrary to the overwhelming weight of the evidence. To hold otherwise would nullify the heightened burden of proof required at trial. Additionally, termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).

Because the trial court's judgment may be affirmed if any of the grounds for termination it found true, and that termination is in the best interest of the child, are supported by the evidence, in its appellate brief, the Department only addresses three of the grounds found by the trial court. They are, that appellant a) neglected Ashley by knowingly placing, or allowing her to remain, in conditions which endangered her well-being, b) engaged in conduct or placed her with persons who engaged in conduct which endangered her well-being, and c) engaged in criminal conduct resulting in his imprisonment and inability to care for Ashley. Because they are dispositive of this appeal, we focus upon appellant's sixth and seventh issues.

Engaged in Criminal Conduct

Reiterated, appellant argues the evidence was legally and factually insufficient to support a finding he knowingly engaged in criminal conduct that resulted in his conviction, confinement in prison, and inability to care for the child for at least two years. *See* Tex.

Fam. Code Ann. § 161.001(Q) (Vernon Supp. 2001). Appellant reasons that he could properly care for Ashley by placing her with his mother or fiancee during his incarceration.

The Department presents several arguments in response. It initially contends appellant admitted he could not care for Ashley during the time he would be in prison. In doing so, it relies on his affirmative response to the question: "by committing that offense, you knew that you could go to prison and not be able to take care of your daughter, didn't you?" Implicit in this compound question and the Department's argument is the notion that the term "care" in section 161.001(1)(Q) is limited to the parent's personal care of the child. We do not agree with that view.

Subsection (Q) was added to section 161.001(1) by the 75th Legislature. *See* Act of June 2, 1997, H.B. 1826, § 9, 75th Leg., R.S. 1997 Tex.Gen.Laws 2012, 2014 (1997). We have found no published opinion construing the term "care" in subsection (Q). However, a long line of cases have recognized the rule that incarceration alone cannot support a termination of parental rights. *See, e.g., Tex. Dept. of Human Svcs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987); *In re B.T.,* 954 S.W.2d 44 (Tex.App.--San Antonio 1997, pet. denied).* The Department argues these cases are inapplicable because they were decided prior to the adoption of subsection (Q). We disagree. There is nothing in the text of subsection (Q) or in the bill analysis that would indicate the legislature intended to change or alter the established rule. Because incarceration is inherently inconsistent with providing personal care for a child, the legislature's inclusion of the phrase "and inability to care for

6

the child" would be meaningless unless care encompassed arranging for care to be provided by another. Without a clear indication of legislative intent to alter the established rule, we decline to adopt the Department's position.

As we noted, appellant argues on appeal that he could provide parental care for Ashley by placing her with his mother, JoAnn Gomez, or his fiancee, Patricia Ann Sanchez, and that the Department failed to disprove these options. However, neither JoAnn or Patricia testified that they were willing to care for Ashley or that they had the resources to provide for her care. Patricia's testimony concerning her relationship with appellant was that it only lasted for one summer and ended two years before trial.

Appellant has failed to present any authority supporting his position that the Department had the burden to disprove the existence of anyone with whom Ashley could be placed during his incarceration. Adopting such a rule would place an unreasonable burden on the Department and judicial resources. Under the rule advocated by appellant, the Department would not only be required to locate every relative or other person with whom the parent had a close relationship, but to establish that none of them would provide care for the child. The better reasoned rule is that once the Department has established a parent's knowing criminal conduct resulting in their incarceration for more than two years, the parent must produce some evidence as to how they would provide or arrange to provide care for the child during that period. When that burden of production is met, the

7

Department would have the burden of persuasion that the arrangement would not satisfy the parent's duty to the child.

Because the record does not contain any evidence that appellant's mother or former fiancee could and would provide care for Ashley during his incarceration, the Department had no burden to disprove the capacity of those people to care for Ashley.

Inasmuch as appellant failed to present any evidence as to the availability of someone else to take care of Ashley during his incarceration, the trial court's finding in that regard could not be against the overwhelming weight of the evidence. We find the evidence supporting this trial court finding both legally and factually sufficient and overrule appellant's sixth issue.

As we noted above, in his seventh and final issue, appellant argues the trial court erred in denying his motion for new trial because the evidence introduced against Melissa was unfairly prejudicial to him because he had no knowledge of her conduct. The decision whether to sever the portion of the Department's action concerning appellant from that involving Melissa was within the trial court's decision. *See* Tex. R. Civ. P. 41; *McGuire v. Commercial Union Ins. Co. Of New York*, 431 S.W.2d 347, 351 (Tex. 1968). In contending the trial court erred, appellant cites *Guerra v. Texas Dept. Of Protective and Regulatory Svcs.,* 940 S.W.2d 295, 299 (Tex.App.--San Antonio 1997, no writ), and *State Dept. of Highways v. Cotner*, 845 S.W.2d 818, 819 (Tex. 1993), for the proposition that a severance would have been proper. However, the cases are distinguishable because the question

8

presented by this issue is not whether the trial court could have severed the portion of the Department's action seeking termination of appellant's rights from that seeking termination of Melissa's rights. It is, rather, whether the trial court abused its discretion in denying such a severance.

The test for determining whether the trial court abused its discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

Texas Rule of Civil Procedure 40, in relevant part, provides, "[a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transactions, occurrence, or series of transactions or occurrences and if any questions of law or fact common to all of them will arise in the action." Tex. R. Civ. P. 40. Appellant's knowledge of Melissa's activities was a disputed fact question at trial. Under the evidence, the trial court could well have concluded that the questions concerning the welfare and care of Ashley by both parents were sufficiently intertwined to justify a joint trial. Accordingly, the trial court did not abuse its discretion in refusing to sever. Appellant's seventh issue is overruled.

9

As we held in our discussion of appellant's sixth issue, the evidence was sufficient to justify the trial court finding that appellant had engaged in criminal conduct that resulted in his imprisonment and inability to care for Ashley. That being true, we must, and do, affirm the judgment of the trial court.

John T. Boyd
Chief Justice

Publish.