NO. 07-02-0148-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 10, 2002



______________________________




EX PARTE DARRICK MARCIANO KIZZEE, RELATOR



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 By this original proceeding, relator Darrick Marciano Kizzee, proceeding pro se and
in forma pauperis, has filed a petition for writ of habeas corpus. We dismiss the petition
for want of jurisdiction.

 This Court is obligated to determine, sua sponte, its jurisdiction in each case. 
Welch v. McDougal, 876 S.W.2d 218, 220 (Tex.App.--Amarillo 1994, writ denied). That
jurisdiction is established by various constitutional and statutory provisions. See, e.g.,
Tex. Const. art. 5, § 6; Tex. Gov't Code Ann. § 22.220 (Vernon 1988); Ex Parte Lewis, 663
S.W.2d 153, 154 (Tex.App.--Amarillo 1983, no pet.). 


 Article 11.05 of the Texas Code of Criminal Procedure Annotated (Vernon 1977)
lists the courts which are authorized to issue a writ of habeas corpus. Absent from that list
are the courts of appeals. Greenville v. State, 798 S.W.2d 361, 362 (Tex.App.--Beaumont
1990, no pet.). This Court's habeas corpus jurisdiction in criminal matters is appellate
only. Denby v. State, 627 S.W.2d 435 (Tex.App.--Houston [1st Dist.] 1981, original
proceeding), cert. denied, 462 U.S. 1110, 103 S.Ct. 2461, 77 L.Ed.2d 1338 (1983). 
Moreover, relator's petition is directed to the 181st District Court of Potter County, Texas.

 Accordingly, the petition for writ of habeas corpus is dismissed for want of
jurisdiction.


 Don H. Reavis 

 Justice

 

 


Do not publish.



e="false" DefUnhideWhenUsed="true"
 DefSemiHidden="true" DefQFormat="false" DefPriority="99"
 LatentStyleCount="267">
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-00476-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 



AUGUST
19, 2011

 



 

IN THE INTEREST OF S.J.P.P., A CHILD



 



 

 FROM THE COUNTY COURT AT LAW NO. 3
OF LUBBOCK COUNTY;

 

NO. 2010-551,141; HONORABLE JUDY C. PARKER, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

 

Appellant, Bill, appeals from the trial courts order
terminating his parental rights to his child, S.J.P.P.[1]  He presents two issues.  We will overrule his issues and affirm the
judgment of the trial court.

Background

Bill and Daniele were married and had a son, S.J.P.P, born in
May 2003.  The parties divorced in
January 2005. At that time, Bill was named possessory conservator, was not
ordered to pay child support, and had visitation at any time mutually agreed by
the parties.  At the time of the divorce,
both parties were incarcerated for forgery of the same check.  Daniele was sentenced to one year and Bill to
15 years.

On April 13,
2010, Daniele filed a petition to terminate Bills parental rights and to
change the childs name.  In that
petition, Daniele alleged Bills parental rights should be terminated under
subsections (F), (H) and (Q) of Family Code § 161.001(1).  Tex. Fam. Code Ann. § 161.001(1)(F), (H), (Q)
(West 2009).  A hearing was held on the
petition on October 5, 2010.  Bills
request for a bench warrant to attend the hearing was denied but he
participated via telephone.

At the
hearing, the court heard testimony that Daniele took S.J.P.P. to see Bill while
he was in prison but the visits ended when the child was five months old.  Since then, Bill has continually written to
his son, making effort to stay in contact with him.  He also took several educational and behavior
modification classes while incarcerated, including a gang renouncement class,
parenting classes, anger management classes, and four substance abuse classes.
He also became a certified painter, estimator and appraiser and worked toward
an associates degree in business administration.  He has a job prospect when he is released
that will earn him $3000 per month.   In
April 2010, he was required to, and did take, a Changes One class.  This class is a prerequisite for being
released on parole and, according to Bill, may be taken only when release is
expected within two years.

The court
concluded the hearing without ruling and later issued a letter ruling, followed
by an order, terminating Bills parental rights under § 161.001(1)(Q).  It is from that order Bill now appeals.

Analysis

By his two issues on appeal, Bill argues the evidence
presented at the hearing was legally and factually insufficient to support
termination of his parental rights under Family Code § 161.001(1)(Q) because he
presented evidence showing he would be paroled before the expiration of that
subsections two-year period and showing he would be able to care for S.J.P.P.
during his incarceration.

The natural
right that exists between parents and their children is one of constitutional
dimension. In re J.W.T., 872 S.W.2d 189,
194-95 (Tex. 1994).
A parent's right to "the companionship, care, custody and management"
of his children is a constitutional interest "far more precious than any
property right." Santosky v. Kramer, 455 U.S. 745,
758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982) (quoting Stanley v. Illinois, 405 U.S. 645, 651,
92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972)). Therefore, in a case terminating parental
rights, the proceedings are strictly scrutinized, and the involuntary
termination statutes are strictly construed in favor of the parent. Holick v. Smith, 685 S.W.2d 18, 20
(Tex. 1985).

Termination of parental rights is a drastic remedy
and is of such weight and gravity that due process requires the petitioner to
justify termination by "clear and convincing evidence." Spangler v. Texas
Dept. of Prot. & Reg. Servs., 962 S.W.2d 253, 256 (Tex. App.-- Waco
1998, no pet.). This
standard is defined as "that measure or degree of proof which will produce
in the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established." Id.; Tex. Fam. Code Ann.
§ 161.001 et. seq (West 2010).  In a
proceeding to terminate the parent-child
relationship brought under section 161.001
of the Texas Family Code, the movant must establish by clear and convincing evidence two
elements: (1) one or more acts or omissions enumerated under subsection (1) of
section 161.001 and (2) that termination is in the best interest of the child.[2]
Tex. Fam. Code Ann. § 161.001 (West 2010); Swate v. Swate, 72 S.W.3d 763, 766
(Tex.App.-- Waco 2002, pet. denied). The factfinder must find that both elements are established
by clear and convincing evidence, and proof of one element does not relieve the
petitioner of the burden of proving the other. Holley v. Adams, 544 S.W.2d 367,
370 (Tex. 1976); Swate, 72 S.W.3d at 766.

            In a legal sufficiency review, a court should look at
all the evidence in the light most favorable to the finding to determine
whether a reasonable trier of fact could have formed a firm belief or
conviction that its finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). In this context, looking at the evidence in the
light most favorable to the judgment means that a reviewing court must assume
that the factfinder resolved disputed facts in favor of its finding if a
reasonable factfinder could do so.  Id. A corollary to this requirement is
that a court should disregard all evidence that a reasonable factfinder could
have disbelieved or found to have been incredible.  Id.

            In determining a factual-sufficiency
point, the higher burden of proof in termination cases also alters
the appellate standard of review. In re C.H., 89 S.W.3d 17, 26
(Tex. 2002).
"[A] finding that must be based on clear and convincing evidence cannot be
viewed on appeal the same as one that may be sustained on a mere
preponderance." Id. at 25. In considering whether evidence
rises to the level of being clear and convincing, we must consider whether the
evidence is sufficient to reasonably form in the mind of the factfinder a firm
belief or conviction as to the truth of the allegation sought to be
established. Id. We consider whether disputed evidence is such that a
reasonable factfinder could not have resolved that disputed evidence in favor
of its finding. J.F.C., 96 S.W.3d at 266. "If, in light of the entire
record, the disputed evidence that a reasonable factfinder could not have
credited in favor of the finding is so significant that a factfinder could not
reasonably have formed a firm belief or conviction, then the evidence is
factually insufficient." Id.

Subsection 161.001(1)(Q) allows termination of parental rights when a parent knowingly has engaged in criminal
conduct, resulting in the parent's conviction of an offense, and the parent is
both incarcerated and unable to care for the child for at least two years from
the date the termination petition was filed. Tex. Fam. Code Ann. § 161.001(1)(Q) (West
2010). Incarceration and a parent's inability to provide care are separate
requirements for termination of parental
rights under subsection 161.001(1)(Q)(ii). In re E.S.S., 131 S.W.3d 632, 639 (Tex. App.--
Fort Worth 2004, no pet.); In re B.M.R., 84 S.W.3d 814, 818 (Tex. App.--
Houston [1st Dist.] 2002, no pet.). Subsection Q's two-year
time period applies prospectively.  In re A.V., 113 S.W.3d 355, 360 (Tex. 2003).

That Bill knowingly engaged in criminal conduct and
was convicted and incarcerated is not disputed. 
Bills challenge focuses on the evidence his incarceration will continue
for at least two years from the date the termination petition was filed, that
is, until April 13, 2012, and that he will be unable to care for his son during
that time. Tex. Fam.
Code Ann. § 161.001(1)(Q).    

Bill testified he would be considered
for parole in July 2011.  He also
acknowledged he was denied parole in July 2010 and his long-term projected
release date is March 5, 2018.  A letter
from the Texas Department of Corrections was admitted into evidence, confirming
this information.  As noted, Bill
testified he participated in a pre-release class in which only inmates expected
to be released within two years may participate.  He attributed his denial of parole in July 2010
to the fact he then had not yet completed the pre-release class.

            Evidence
of the availability of parole is relevant to determine whether the parent will
be released within two years of the date the termination petition was
filed.  In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).  However, mere introduction of parole-related evidence does
not prevent a fact-finder from forming a firm conviction or belief that the
parent will remain incarcerated for at least two years. Id. Parole
decisions are inherently speculative, and while all inmates doubtless hope for
early release and can take positive steps to improve their odds, the decision
rests entirely with the parole board. Id.  Evidence of participation in a pre-release
program available to inmates within two years of parole does not preclude a
finding the parent will remain incarcerated. 
Id. 

While the evidence illustrated the possibility of Bills
release prior to April 13, 2012, as the court determined on a similar record in
H.R.M., such evidence did not prevent
the trial court from forming a firm belief or conviction he would remain
incarcerated after that date. H.R.M.,
209 S.W.3d at 109.  The trial court was
free to credit and give greater weight to the facts Bill was serving a 15-year
sentence, had once been denied parole, and had a projected release date of
March 5, 2018.  Id.  Viewing the evidence
under the proper standards, we find the evidence before the trial court was
sufficient to permit the court to form a firm conviction or belief Bill would
remain incarcerated until at least April 13, 2012.

We find the
evidence similarly sufficient that Bill would be unable to care for his son
during his incarceration.  We note
initially that the requirement of showing an inability to care for a child is
not met by evidence of incarceration alone. 
In re Caballero, 53 S.W.3d
391, 396 (Tex.App.Amarillo 2001, pet. denied) (addressing term care in
subsection (Q)).  At the same time,
evidence that the child resides with his mother does not preclude a finding
Bill is unable to provide for him.  See H.R.M., 209 S.W.3d at 110 (absent
evidence non-incarcerated parent agreed to care for child on behalf of
incarcerated parent, merely leaving child with non-incarcerated parent does not
constitute ability to provide care). 
Courts have determined that the factors to be considered when deciding
whether an incarcerated parent is unable to care for a child include the
availability of financial and emotional support.  See,
e.g., In re B.M.R., 84 S.W.3d 814, 818 (Tex.App.Houston [1st
Dist.] 2002, no pet.). Holding that subsection Q applies prospectively rather
than retroactively, the court in A.V.,
described its aim as ensuring that the child will not be neglected, because a
parent will be unable to provide for the child during incarceration.  A.V.,
113 S.W.3d at 360.  Daniele testified
Bill never provided support to S.J.P.P. 
She testified she alone supported their son and Bill was not ordered to
pay child support.  Bill acknowledges
that until he is released, he has neither the means to provide financial
support to his son[3]
nor anyone willing to care for S.J.P.P. in his stead.  

Bill has not
seen his child since S.J.P.P. was five months old.  Bill argues on appeal, however, that he
stayed in contact with S.J.P.P. by writing letters to him and thus provided him
emotional support.  He highlights his
effort to maintain contact, including filing a motion for enforcement at one
point, seeking to obtain a mailing address for his son.  While Bill is correct that emotional support
is an important element of care for a child, the concept of care in
subsection Q clearly involves more than emotional support.  Caballero,
53 S.W.3d at 396.  The evidence to which
Bill points speaks not at all, for example, to how S.J.P.P. will be fed,
clothed, sheltered, or educated until Bill is released, or how the boy will be
ensured the presence of nurturing adults. 
See In re E.S.S., 131 S.W.3d
at 640 (incarcerated parent proposed mother and brother as possessory
conservators with visitation rights).    

            We
overrule Bills challenges to the sufficiency of the evidence termination was
warranted under Family Code § 161.001(1)(Q). 
As noted, Bill does not challenge the courts finding that termination
was in his sons best interest. 
Accordingly, we affirm the judgment of the trial court.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

 

 











[1]
In their appellate briefs, the
parents of S.J.P.P. identify themselves by the names Bill and Daniele.  We also will use those names.  Tex. R. App. P. 9.8. 





[2]
Bill does not challenge the
trial courts finding that termination is in S.J.P.P.s best interest.





[3]
Bill has two other
children.  He testified he does not
provide support to them.