NO. 07-02-0332-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JUNE 24, 2003


______________________________



IN THE INTEREST OF R.L.T.
, A MINOR CHILD


_________________________________



FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;



NO. 01-07-18,463; HON. ANDY KUPPER, PRESIDING


_______________________________





Memorandum Opinion


_______________________________



Before QUINN and REAVIS, JJ., and BOYD, S.J. (1)

 Calvin Ray Thompson (Thompson) appeals from an order terminating the parental
relationship between him and his daughter, R.L.T. Through two issues, he attacks the
grounds upon which termination was based. That is, he contends that termination could
not be based upon §161.001(1)(Q) of the Texas Family Code because the statute is
unconstitutional. Nor could it be founded upon §161.001(1)(L) of the same code for there
was neither legally nor factually sufficient evidence illustrating that he was criminally
responsible for the death or serious injury of a child. We affirm the order of termination. 





Background


 Patricia Dianne Caswell petitioned the trial court to terminate the parent/child
relationship between Thompson and R.L.T. (2) Several grounds were alleged to justify the
relief sought. However, the trial court concluded that termination was warranted only
because Thompson 1) had been convicted or placed on community supervision for being
criminally responsible for the death or serious injury of a child under §22.021 of the Texas
Penal Code, Tex. Fam. Code Ann. §161.001(1)(L)(viii) (Vernon 2002), and 2) knowingly
engaged in criminal conduct that resulted in his conviction of an offense and confinement
or imprisonment and inability to care for the child for not less than two years from the date
of filing the petition. Id. §161.001(1)(Q). 

Issue One


 Thompson initially contends that termination under §161.001(1)(Q) is impermissible
since the provision is unconstitutional. Furthermore, it is purportedly so because it is
overly broad and discriminates on the basis of wealth. So too does he argue that if the
statute is constitutional, there is no evidence to support the finding that his incarceration
resulted in his inability to care for the child; this is supposedly so because R.L.T.'s mother
can provide the requisite care. We overrule the issue. 

 Sufficiency of the Evidence

 Under §161.001(1)(Q) of the Family Code, a trial court may terminate the
parent/child relationship if the court finds by clear and convincing evidence that the
parents:

 knowingly engaged in criminal conduct that has resulted in the parent's:


 (i) conviction of an offense; and


 (ii) confinement or imprisonment and inability to care for the child for not 

 less than two years from the date of filing the petition . . . .


Tex. Fam. Code Ann. §161.001(1)(Q) (Vernon 2002). Thompson argues that there is no
evidence to support termination under this provision "unless [his ex-wife and mother of 
R.L.T.] admits that she was not a person with whom Appellant could leave the child for
safe and proper care, custody, and supervision." In other words, he contends that
because R.L.T. has another parent who may be able to care for her, the trial court could
not find that he was unable to care for the child due to his incarceration. Furthermore, our
decision in In re Caballero, 53 S.W.3d 391 (Tex. App.--Amarillo 2001, pet. denied) is cited
as support for the proposition. Thompson misconstrues our holding in Caballero. 

 In Caballero, the incarcerated parent argued that he could care for the child by
placing her with his mother or fiancee. However, the State disagreed. It believed that the
parent was required to personally care for the child under the statute. In response to both
contentions, we refused to hold that the word "care" found in §161.001(1)(Q) was limited
to care personally provided by the parent whose rights were in jeopardy. Id. at 395. Thus,
we recognized that if the parent arranged for others to care for the child while he was
incarcerated and these others were willing to and capable of caring for the child, then
§161.001(1)(Q) may be inapplicable. Id. at 395-96. That holding made and continues to
make sense for parents who often arrange to have surrogates act in their stead for
extended periods of time, e.g. a boarding school. Yet, we did not hold that the statute has
no application simply because someone or some entity may be available to care for the
child by default. Nor do we do so now. To adopt such a proposition would effectively
nullify the proviso. In other words, the statute would never have application for the State
is always available by default to assume the care of a child abandoned by its parents. 

 Rather, it was and is implicit in our opinion that the surrogate arise through
agreement with or arrangement by the incarcerated parent. We indicated as much when
we said that "the parent must produce some evidence as to how [the parent] would provide
or arrange to provide care for the child during that period" of incarceration, and when the
parent does so, then the State must prove that "the arrangement would not satisfy the
parent's duty to the child." (Emphasis added.) Id. at 396. In short, the incarcerated parent
must show that another is willing to assume his duties and act on his behalf while he
cannot act. Id. Next, no evidence appears of record illustrating such a consensual
arrangement between Thompson and Caswell, his ex-wife and R.L.T.'s mother. 
Admittedly, as a parent of the child, Caswell has her own duty to support the youth. Yet,
that does not relieve Thompson from performing his parental duties. See Tex. Fam. Code
Ann. §151.001(a)(2) (Vernon 2002) (stating that a parent of a child has the duty of care,
control, protection and reasonable discipline of the child); In re B.I.V., 923 S.W.2d 573,
575 (Tex. 1996) (stating that a single parent who bears the entire financial burden of
supporting the child is entitled to reimbursement from the other parent who has neglected
the duty). 

 Simply put, both R.L.T. and her mother were entitled to look to Thompson for help
in caring for R.L.T. Id. If, because of his incarceration for over two years, he could not
reciprocate directly or through a surrogate who agrees to undertake his duty, he is neither
acting as a parent nor performing his duties. And, in that situation, statute permitted the
termination of his rights even though Caswell was fulfilling her obligation to the child. 
Thus, we cannot hold that the trial court's determination lacks the support of legally
sufficient evidence simply because Thompson's ex-wife performed both her moral and
legal duty to care for R.L.T.

 Constitutionality of §161.001(1)(Q)

 As to the constitutionality of the statute, we conclude that appellant waived his
argument. He did not assert before the trial court that the provision impermissibly
discriminated against him on the basis of wealth. Thus, because this aspect of the
complaint raised on appeal fails to comport with the objection asserted below, the ground
was waived. See Tex. R. App. P. 33.1(a) (requiring the complaint to be made to the trial
court); Moser v. Davis, 79 S.W.3d 162, 169 (Tex. App.--Amarillo 2002, no pet.) (holding
that an issue is waived when the objection on appeal does not comport with the objection
made at trial); Valdez v. Valdez, 930 S.W.2d 725, 728 (Tex. App.--Houston [1st Dist.] 1996,
no writ) (stating that constitutional argument is also encompassed by the rule requiring
preservation of the issue in the trial court). (3)

 Second, and with regard to the contention that the statute is overly broad,
Thompson's argument consists of the following:

 . . . it is a discrimination which is sweeping in its scope: all persons convicted
and incarcerated for any crime of greater severity than a state jail felony become subject to termination of their parental rights, limited only by the 'best interest of the child' requirement of the Family Code §161.001(2);
Texas Penal Code §§12.34, 12.33, 12.32 and 12.31 (penalty ranges for
third, second, first degree and capital offenses).


As can be seen, there is no substantive discussion of the doctrine of overbreadth, its
scope or its prohibitions. Nor does Thompson explain why those sentenced to terms of
imprisonment exceeding two years should not be treated differently from those receiving
a lesser sentence. Nor does appellant cite any authority (direct or analogous) supporting
his conclusion that the statute is unconstitutionally over-inclusive. Given the absence of
citation to authority and substantive analysis, this aspect of issue one was also waived. 
Tex. R. App. P. 38.1(h) (stating that a brief must contain a clear and concise argument for
the contentions made, with appropriate citation to legal authority and the record); Bell v.
State, 90 S.W.3d 301, 305 (Tex. Crim. App. 2002) (stating that the appellant must present
specific arguments and authorities supporting his contentions when briefing a
constitutional issue); Dunlap v. Excel Corp., 30 S.W.3d 427, 434 (Tex. App.--Amarillo
2000, no pet.) (holding that substantive analysis and citation to authority must accompany
an issue to avoid waiver); Goode v. Shoukfeh, 915 S.W.2d 666, 674 (Tex. App.-- Amarillo
1996), aff'd, 943 S.W.2d 441 (Tex. 1997) (holding that the failure to properly brief an
argument is grounds to conclude that the argument was waived). 

 In short, we overrule issue one. Additionally, since only one ground will support
termination and we have found that the trial court did not err in terminating the parent-child
relationship under §161.001(1)(Q), we need not address issue two. Accordingly, the
judgment of the trial court is affirmed. 

 

 Brian Quinn 

 Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. Though once married to each other, Thompson and Caswell are now divorced.
3. Assuming arguendo that the issue had been preserved, we also note that Thompson has not
illustrated that §161.001(1)(Q) discriminates against the impoverished. The record itself indicates that
means may be available to assist the poor in caring for their children. Indeed, it appears that Thompson
once arranged to have clothing and a gift sent by a church to R.L.T., though he was incarcerated. 
Furthermore, it is quite conceivable that government programs may exist to help those in financial distress
care for their children. So, there may well be means available to an impoverished parent enabling the parent
to care for a child, assuming the parent pursues those means. And, to the extent that such avenues exist,
we cannot say that §161.001(1)(Q) discriminates against the poor. Yet, because the issue of poverty was
not raised or developed at trial, we can only speculate on the matter.