Opinion issued October 28, 2004



     






In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00082-CV




OBIE ALLEN THOMPSON, Appellant

v.

TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,
Appellee




On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2001-05117




O P I N I O N

          The father, Obie Allen Thompson, appeals the termination of his parental rights
to his child, M.W.D. In three issues, the father challenges the legal and factual
sufficiency of the evidence to sustain termination of his parental rights under sections
161.001 and 161.004 of the Family Code. We affirm.
Facts
          M.W.D. was born in August 1995. In December 2002, the trial court entered
a decree in the Texas Department of Protective and Regulatory Services’s
(TDPRS’s)


 suit to terminate the parental rights of the biological mother and fathers
in regard to M.W.D., D.L.M., and J.M.H.


 The trial court awarded managing
conservatorship to TDPRS and possessory conservatorship of M.W.D. to the parents,
but did not terminate the parents’ rights as to him. Instead, it ordered both the mother
and the father to comply with a family service plan. Appellant, the father, was in
prison at the time, having been sentenced in March 1998 to serve a 10-year sentence
after violating the conditions of his community supervision for aggravated sexual
assault by committing a robbery and failing to report to his probation officer. Before
the father was incarcerated, at least one referral had been made to TDPRS alleging
physical abuse of M.W.D.
          The father’s plan required him to (1) participate in and complete parenting
classes; (2) participate in and complete a substance abuse assessment and follow
recommendations; (3) participate in random urinalysis if paroled out of prison; (4)
participate in and complete anger management classes; (5) participate in sexual abuse
counseling; (6) participate in sexual abuse perpetrators’ classes and/or sexual
perpetrators’ group therapy; and (7) participate in and complete domestic violence
perpetrators’ classes and/or domestic violence perpetrators’ group therapy. The
decree specified that if these services were not available to the father in prison, or if
the father was released from prison, TDPRS would provide those services that were
“still required” to achieve the goal of family reunification. Regardless, the father was
ordered to obtain these services. 
          The caseworker testified that she sent the father the family service plan, with
a letter explaining it, and provided contact information. After the father signed and
returned the plan, the caseworker sent him another letter advising him to mail
information to her regarding his attempts to comply with the court’s order and service
plan. The father sent one letter to the TDPRS caseworker in which he stated his
intention to attend the appropriate classes, but he never contacted her again. Neither
the caseworker nor the child advocate investigated whether the prison provided any
of the classes the father was ordered to complete or whether he completed any of
them.
 
          In the year following the court’s decree, neither the mother nor the father
complied with the family service plan, the father’s request for parole was denied, and
the child showed improvement in his behavior while in therapeutic foster care. When
TDPRS petitioned a second time to terminate parental rights in December 2003, the
trial court terminated both parents’ rights and this appeal ensued. The mother has
since abandoned the appeal; thus, we consider the termination only in regard to
M.W.D., the father’s biological child.
Termination of Parental Rights
          After an earlier petition to terminate parental rights has been denied, the trial
court may terminate parental rights under section 161.004 of the Family Code, which
provides:
(a) The court may terminate the parent-child relationship after rendition
of an order that previously denied termination of the parent-child
relationship if:
 
(1) the petition under this section is filed after the date the
order denying termination was rendered;
 
(2) the circumstances of the child, parent, sole managing
conservator, possessory conservator, or other party affected
by the order denying termination have materially and
substantially changed since the date that the order was
rendered;
 
(3) the parent committed an act listed under Section
161.001 before the date the order denying termination was
rendered; and
 
(4) termination is in the best interest of the child.
 
(b) At a hearing under this section, the court may consider evidence
presented at a previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child.

Tex. Fam. Code Ann. § 161.004(a),(b) (Vernon 2002).
          Subsection 161.004(a)(3) is satisfied by a finding by the court under section
161.001 of the Family Code, based on clear and convincing evidence, that, prior to
an order denying termination,
(1) the parent has:
. . . .
(L) been convicted or has been placed on community
supervision, including deferred adjudication community
supervision, for being criminally responsible for the death
or serious injury of a child under the following sections of
the Penal Code or adjudicated under Title 3 for conduct
that caused the death or serious injury of a child and that
would constitute a violation of one of the following Penal
Code sections:
. . . .
(viii) Section 22.021 (aggravated sexual assault);
. . . .[or]
(O) failed to comply with the provisions of a court order
that specifically established the actions necessary for the
parent to obtain the return of the child who has been in the
permanent or temporary managing conservatorship of the 
[TDPRS] for not less than nine months as a result of the
child’s removal from the parent under Chapter 262 for the
abuse or neglect of the child; [or]
. . . .
(Q) knowingly engaged in criminal conduct that has
resulted in the parent’s:
                              (I) conviction of an offense; and
(ii) confinement or imprisonment and liability
to care for the child for not less than two
years from the date of filing the petition;
. . . and
(2) that termination is in the best interest of the child.

Tex. Family Code Ann. § 161.001 (Vernon 2002).
          In three issues on appeal, the father contends the evidence was legally and
factually insufficient to show (1) that there was a previous ground for termination, (2)
that there was a material and substantial change of circumstance, and (3) that he did
not comply with the court’s order establishing the actions necessary for him to obtain
the return of M.W.D.
          Standard of Review
          In all proceedings to terminate the parent-child relationship, the State bears the
burden to prove its case by clear and convincing evidence. See In re G.M., 596
S.W.2d 846, 847 (Tex. 1980). On appeal, we must determine whether the evidence
was such that a fact-finder could reasonably have formed a firm belief or conviction
about the truth of the State’s allegations. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002).
          We review the evidence in the light most favorable to the trial court’s ruling
to determine whether it is legally sufficient. In re J.F.C., 96 S.W.3d 256, 266 (Tex.
2002). To determine whether the evidence is factually sufficient, we consider
whether, in light of the entire record, the disputed evidence is so significant that the
fact-finder could not reasonably have formed a firm belief or conviction about the
truth of the allegations. Id. at 266-67.
          Grounds for Appeal
          As a threshold matter, we reject the father’s argument that the trial court’s only
basis for termination was under Family Code section 161.001(1)(O) because this was
the only ground for termination recited in the judgment. See Tex. Family Code §
161.001(1)(O)(parent failed to comply with provision of court order establishing
actions necessary to parent to obtain return of child).
          Findings of fact and conclusions of law shall not be recited in a judgment and,
if they are, they cannot form the basis of a claim on appeal. See Frommer v.
Frommer, 981 S.W.2d 811, 814 (Tex. App.—Houston [1st Dist.] 1998, pet. dism’d). 
Thus, the recitation in the judgment that the father failed to comply with the family
service plan cannot be the basis of the father’s appeal; rather, the basis of the appeal
is the insufficiency of the evidence to support the trial court’s judgment. When, as
here, the trial court makes no findings of fact, we presume the trial court made all the
findings necessary to support its judgment. Worford v. Stamper, 801 S.W.2d 108,
109 (Tex. 1990). If any legal theory is supported by the judgment, we must affirm. 
Id.; Frommer, 981 S.W.2d at 814. Therefore, we must determine whether the
evidence was legally and factually sufficient to support the judgment terminating the
father’s parental rights.
          Sufficiency of the Evidence
          The second petition was filed a year after the order denying termination was
rendered, thus the first statutory element for termination under section 161.004 of the
Family Code is satisfied. See Tex. Fam. Code Ann. § 161.004(a)(1) (petition must
be filed after rendition of order denying termination). The father was convicted of
aggravated sexual assault under section 22.021 of the Penal Code; thus the third
statutory element is satisfied. See Tex. Fam. Code Ann. § 161.001(L)(viii)
(enumerating acts committed by a parent that would allow involuntary termination
of parental rights, including conviction for aggravated sexual assault); see also §
161.004(a)(3) (requiring proof that parent committed act enumerated under section
161.001 before order denying termination was rendered). We thus examine the
evidence of the remaining elements identified in section 161.004—whether there has
been a material and substantial change in circumstance and whether termination is in
the child’s best interest—to determine whether the evidence was legally and factually
sufficient to terminate the father’s parental rights.
          Material & Substantial Change in Circumstances
          Although the father contends there have been no material and substantial
changes in circumstances since the original petition was denied, the record shows that
there have been such changes to the circumstances of the father, the mother, and the
child—all of which are relevant under the statute. See Tex. Fam. Code Ann. §
161.004(a) (specifying that circumstances may change as to child, parent, or “any
other party” affected). The mother has been unable to follow the service plan, and her
rights have been terminated. The change in the mother’s circumstances is relevant
to the child’s circumstances because there is now no possibility of the child and both
parents being reunited in a suitable home. It is also relevant because, as the father is
in prison, he is in no position to care for the child without the mother, and he has
provided no evidence that other family members can and will care for the child. 
Although incarceration alone will not support a termination of parental rights, the
Family Code provides that termination may result if the court finds that a parent
knowingly engaged in criminal conduct that resulted in conviction and confinement
for more than two years and an inability to care for the child. See Tex. Fam. Code
Ann. § 161.001(1)(Q); In re Caballero, 53 S.W.3d 391, 395 (Tex. App.—Amarillo
2001, pet. denied).
          Here, the father violated the terms of his community supervision, resulting in
his imprisonment for more than two years for his original offense, beginning in
March 1998. In addition, the father’s application for parole has been rejected; thus,
his imprisonment extended beyond two years for that offense. By looking at future
imprisonment and inability to care for the child, Family Code subsection
161.001(1)(Q) protects children whose parents will be incarcerated for periods
exceeding two years after termination proceedings begin; thus, we apply this statute
prospectively. Tex. Fam. Code Ann. § 161.001(1)(Q); see also In re A.V., 113
S.W.3d 355, 361 (Tex. 2003).
          Although the father suggests in his reply brief that he was under no obligation
to make arrangements for his child because the child is in TDPRS conservatorship,
nothing in the statute relieved him of his responsibility to make arrangements for his
child merely because he was in prison and the child was in TDPRS conservatorship;
nor does this fact alter the fact that family circumstances have changed, including
termination of M.W.D.’s mother’s parental rights. M.W.D.’s progress in foster care
is also a change in circumstance because it has readied him for a more permanent
placement.


 
          Finally, the record shows that the father has not complied with his service plan. 
The court’s order appointing him possessory conservator and establishing a family
service plan for him plainly placed the burden on the father to participate in and
complete parenting classes; participate in and complete a substance abuse assessment
and follow recommendations; participate in random urinalysis if paroled out of
prison; participate in and complete anger management classes; participate in sexual
abuse counseling; participate in sexual abuse perpetrators’ classes and/or sexual
perpetrators’ group therapy; and participate in and complete domestic violence
perpetrators’ classes and/or domestic violence perpetrators’ group therapy. Although
the father argues on appeal that the agency did not investigate whether the classes
were available or otherwise determine whether he complied with his service plan, the
trial court’s order plainly placed the burden on him to comply with the order, whether
or not he was incarcerated; it did not place the burden on the TDPRS to ensure his
compliance. 
          In a similar case, the Amarillo court refused to place the burden on TDPRS to
disprove the existence of anyone with whom defendant’s child could be placed during
his incarceration because adopting such a rule would place an unreasonable burden
on the agency and judicial resources. See Caballero, 53 S.W.3d at 396 (“The better
reasoned rule is that once the Department has established a parent's knowing criminal
conduct resulting in their incarceration for more than two years, the parent must
produce some evidence as to how the parent would provide or arrange to provide care
for the child during that period. When that burden of production is met, the
Department would have the burden of persuasion that the arrangement would not
satisfy the parent's duty to the child.”). 
          We agree with the Amarillo court’s logic and consider it analogous here. See
id. To require TDPRS to continually inquire as to a prisoner’s efforts and
accomplishments in regard to a service plan is not reasonable. Once the caseworker
and child advocate testified that the father had not contacted the agency or provided
any evidence of his compliance with the service plan, it became his burden to rebut
this evidence. As he did not, the evidence of his noncompliance was sufficient. 
          Because each of the conditions with which the father failed to comply was a
condition precedent to maintaining possessory conservatorship imposed by the
court’s December 2002 decree denying termination of parental rights at that time, the
evidence that the father did not comply with the court-ordered plan is necessarily
indicative of a change in circumstance between the time the prior order was entered
and the time this suit was filed seeking termination of appellant’s parental rights after
denial of the prior petition to terminate. See Tex. Family Code Ann. §
161.004(a)(2). Before the court imposed the service plan in its December 2002
decree, the father had no obligation to undertake these corrective steps. We hold that
TDPRS met its burden to prove by clear and convincing evidence that circumstances
had materially and substantially changed in regard to the entire family during the year
following the original order denying termination and the second order terminating the
father’s parental rights.
Best Interest of the Child
          Without actually addressing any particulars regarding the child’s best interest,
the father simply contends that no evidence was presented, other than some
improvement in the child’s behavior, to show that termination was in the child’s best
interest. We cannot agree. 
          In Holley v. Adams, the Texas Supreme Court identified several factors to be
used to determine what is in a child’s best interest. 544 S.W.2d 367, 372 (Tex. 1976). 
While these factors are neither exclusive nor exhaustive, they are certainly
instructive, and include: the child’s desires; the child’s current and future emotional
and physical needs; current and future physical and emotional danger to the child; the
parental abilities of persons seeking custody; programs available to assist those
persons seeking custody; plans for the child; the stability of the child’s placement; the
parent’s acts or omissions indicating that the parent-child relationship is not a proper
one; and any excuse for the parent’s acts or omissions. Id. 
          Here, the child has been in foster care since he was two years old, and is still
at a young enough age where adoption is more feasible. The State urges this Court
to conclude that termination was in the child’s best interest because it contends that
(1) the father’s criminal acts jeopardized M.W.D.’s well being; (2) his failure to
comply with the service plan shows the parent-child relationship is not proper; (3)
there are no programs that can prevent the father from committing criminal acts in the
future or force him to comply with the service plan; (4) there is no evidence that the
father was involved in the child’s life before he went to prison or evidence that the
child knows or asks about his father; (6) the child is happy and adjusting well in
foster care; (7) because he has attention-deficit disorder, the child has special needs
that the father cannot address; and (8) the father has done nothing while in prison to
provide financial or emotional support to the child or to make arrangements for his
continued care. We conclude, based on Holley, that, given the child’s current and
future emotional and physical needs, the father’s incarceration, lack of parenting
skills, and noncompliance with the service plan, the child’s special needs, and the
stability of the child’s placement, TDPRS met its burden, and the trial court did not
err in determining that termination was in the child’s best interest.
          When we view all of the foregoing evidence in the light most favorable to the
trial court’s ruling, we conclude that the evidence was such that a fact-finder could
have reasonably formed a firm belief or conviction about the truth of the State’s
allegations. Thus, the evidence was legally sufficient to sustain the termination.
          When we view the record as a whole, as required in a factual-sufficiency
review, we can only reach the same conclusion as to the factual sufficiency of the
evidence, primarily because the father did not present any controverting evidence—he
simply relied on his assertion that TDPRS had a duty to inquire as to whether he
complied with the service plan, an assertion we have rejected. We therefore hold that
the evidence was factually sufficient to sustain termination of the father’s parental
rights.
Conclusion
          We overrule all issues presented. 
          We affirm the trial court’s judgment.
 

                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.