

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00291-CV

| | | |
|---|---|---|
| In the Interest of K.G.B. | § | From the 323rd District Court |
| | § | of Tarrant County (323-94899J-11) |
| | § | November 15, 2012 |
| | § | Per Curiam |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

PER CURIAM



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00291-CV

IN THE INTEREST OF K.G.B.

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant, K.G.B.'s alleged father, appeals from the trial court's order terminating his rights to K.G.B. We affirm.

In his third issue, appellant contends that the evidence is legally and factually insufficient to support termination under section 161.001(1)(Q) of the family code because the evidence showed that appellant, who was incarcerated at the time of trial, might be released on parole less than two years from the filing of the petition, and because the evidence was not clear and convincing that he

---

[1]*See* Tex. R. App. P. 47.4.

would serve more than two years before being released on parole. Tex. Fam. Code Ann. § 161.001(1)(Q) (West Supp. 2012).

Section 161.001(1)(Q) provides that a trial court may order termination if it finds by clear and convincing evidence that the parent has knowingly engaged in criminal conduct that has resulted in (1) the parent's being convicted of an offense resulting in confinement or imprisonment, and (2) the parent's inability to care for the child, for not less than two years from the date of filing of the petition. *Id.* Subsection (Q) was enacted for the protection of children rather than as a notice provision. *In re D.J.H.*, No. 04-11-00668-CV, 2012 WL 3104502, at *4 (Tex. App.—San Antonio Aug. 1, 2012, no pet.). As the supreme court has explained,

> [S]ubsection Q focuses on the parent's future imprisonment and inability to care for the child, not the criminal conduct that the parent committed in the past. By looking at future imprisonment and inability to care for the child, subsection Q purports to protect children whose parents will be incarcerated for periods exceeding two years after termination proceedings begin.

*In re A.V.*, 113 S.W.3d 355, 360–61 (Tex. 2003). The court also explained that by reading subsection (Q) to apply prospectively, "the subsection fills a gap left by other grounds for termination." *Id.* at 360. According to the court,

> [a] prospective reading of subsection Q allows the State to act in anticipation of a parent's abandonment of the child and not just in response to it. Thus, if the parent is convicted and sentenced to serve at least two years and will be unable to provide for his or her child during that time, the State may use subsection Q to ensure that the child will not be neglected.

*Id.*

3

The Department of Family and Protective Services filed its original termination petition on July 12, 2011. Therefore, to terminate appellant's rights under subsection (Q), the Department had to show that appellant would be confined through July 12, 2013. Tex. Fam. Code Ann. § 161.001(1)(Q); *In re A.V.*, 113 S.W.3d at 360–61.

Appellant was sentenced to four years' confinement on July 27, 2011, and his projected release date at the time of trial was July 7, 2015. Appellant testified that he had been denied parole and that his case would not be further considered until March 2013; *if* he were granted parole at that time, he would be released in March or April 2013. But the supreme court has held that because parole is inherently speculative, the possibility of a parent being granted parole within the requisite two-year period does not render otherwise clear and convincing evidence under (Q) insufficient, especially in light of multiple prior convictions and a previous denial of parole. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006); *In re R.A.L.*, 291 S.W.3d 438, 443–44 (Tex. App.—Texarkana 2009, no pet.). Given appellant's past criminal history and his prior denial of parole, there is sufficient evidence supporting a finding that appellant would be confined through July 12, 2013.

Once the Department has established that a parent's knowing criminal conduct resulted in his or her incarceration for more than two years, the burden shifts to the parent to produce some evidence as to how he or she will arrange to provide care for the child during that period. *In re S.S.A.*, No. 02-11-00180-CV,

4

2012 WL 2923285, at \*8 (Tex. App.—Fort Worth July 19, 2012, no pet.) (mem. op.); *In re Caballero*, 53 S.W.3d 391, 396 (Tex. App.—Amarillo 2001, pet. denied). When that burden of production is met, the Department then has the burden of persuasion that the arrangement would not satisfy the parent's duty to the child. *In re S.S.A.*, 2012 WL 2923285, at \*8; *In re Caballero*, 53 S.W.3d at 396; *see also In re H.R.M.*, 209 S.W.3d at 110 ("Terminating parental rights under subsection Q requires that the parent be both incarcerated or confined *and* unable to care for the child for at least two years from the date the termination petition is filed.").

Appellant testified that his preference was for K.G.B. to be placed with his uncle, appellant's brother. But appellant also testified that he could not provide for K.G.B. with a home or financial support. A Department caseworker testified that she interviewed K.G.B.'s paternal grandmother and his older sister and that neither home was suitable for placement. She further testified that she was considering at the time of trial placement with appellant's brother and his wife; however, the wife had a CPS history with a reason-to-believe finding. The caseworker testified that she nevertheless was going to pursue her supervisors' approval to do a home study for placement with appellant's brother and his wife. She testified that they would be "more than willing to take [K.G.B.] in" and that she thought he and his wife would be amenable to adopting K.G.B. The caseworker said that if K.G.B.'s parents' rights were not terminated, thus

allowing him to be adopted, he would most likely age out of the foster system, which was an undesirable result and not in K.G.B.'s best interest.[2]

Although there was evidence that appellant's brother was willing to care for K.G.B., there is no evidence that such care would be on appellant's behalf[3] during his incarceration. *See In re H.R.M.*, 209 S.W.3d at 110. In fact, there was some evidence indicating that appellant's brother would be willing to adopt K.G.B. And at the time of trial, there was no guarantee that appellant's brother's home would be a suitable placement. Accordingly, we conclude and hold that the evidence is both legally and factually sufficient to support termination under subsection (Q). *See id.*; *In re K.N.N.*, No. 09-11-00317-CV, 2011 WL 5989007, at *4 (Tex. App.—Beaumont Dec. 1, 2011, no pet.) (mem. op.). We overrule appellant's third issue.

Because the Department must prove termination under only one ground, we need not address his first, second, and fourth through sixth issues because they involve alleged errors concerning other termination grounds. *See In re A.J.M.*, 375 S.W.3d 599, 609 (Tex. App.—Fort Worth 2012, pet. denied) (en banc op. on reh'g).

---

[2]K.G.B. was almost fourteen years old at the time of trial in July 2012.

[3]The caseworker testified that K.G.B. would like to live with his uncle. In contrast, the CASA worker testified that K.G.B. had told him that he did not want to see his father again because he had seen his father choking his mother.

Having overruled appellant's dispositive issue, we affirm the trial court's order. *See* Tex. R. App. P. 47.1.

PER CURIAM

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  November 15, 2012