COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO.
02-12-00291-CV

 

 


 
 
 In
 the Interest of K.G.B.
  
  
  
  
  
  
 
 
 §
  
 §
  
 §
  
 §
 
 
 From
 the 323rd District Court
  
 of
 Tarrant County (323-94899J-11)
  
 November
 15, 2012
  
 Per
 Curiam
 
 


 

JUDGMENT

 

         
This court has considered the record on appeal in this case and holds that
there was no error in the trial court’s judgment.  It is ordered that the
judgment of the trial court is affirmed.

 

 

SECOND DISTRICT COURT OF APPEALS 

 

 

PER
CURIAM

 




 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO.
02-12-00291-CV

 

 


 
 
 In the Interest of K.G.B.
 
 


 

 

----------

FROM THE 323rd District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

         
Appellant, K.G.B.’s alleged father, appeals from the
trial court’s order terminating his rights to K.G.B. 
We affirm.

         
In his third issue, appellant contends that the evidence is legally and
factually insufficient to support termination under section 161.001(1)(Q) of the family code because the evidence showed that
appellant, who was incarcerated at the time of trial, might be released on
parole less than two years from the filing of the petition, and because the
evidence was not clear and convincing that he would serve more than two years
before being released on parole.  Tex. Fam. Code Ann. § 161.001(1)(Q) (West Supp. 2012).

         
Section 161.001(1)(Q) provides that a trial court may
order termination if it finds by clear and convincing evidence that the parent
has knowingly engaged in criminal conduct that has resulted in (1) the
parent’s being convicted of an offense resulting in confinement or
imprisonment, and (2) the parent’s inability to care for the child, for
not less than two years from the date of filing of the petition.  Id. 
Subsection (Q) was enacted for the protection of children rather than as a
notice provision.  In re D.J.H.,
No. 04-11-00668-CV, 2012 WL 3104502, at *4 (Tex. App.––San Antonio Aug. 1,
2012, no pet.).  As the supreme court has
explained,

[S]ubsection Q focuses on the parent’s future imprisonment and
inability to care for the child, not the criminal conduct that the parent
committed in the past.  By looking at future imprisonment and inability to
care for the child, subsection Q purports to protect children whose parents
will be incarcerated for periods exceeding two years after termination
proceedings begin.

 

In
re A.V., 113 S.W.3d
355, 360–61 (Tex. 2003).  The court also explained that by
reading subsection (Q) to apply prospectively, “the subsection fills a gap left
by other grounds for termination.”  Id. at 360. 
According to the court,

[a]
prospective reading of subsection Q allows the State to act in anticipation of
a parent’s abandonment of the child and not just in response to it.  Thus,
if the parent is convicted and sentenced to serve at least two years and will
be unable to provide for his or her child during that time, the State may use
subsection Q to ensure that the child will not be neglected.

 

Id.

         
The Department of Family and Protective Services filed its original termination
petition on July 12, 2011.  Therefore, to terminate appellant’s rights
under subsection (Q), the Department had to show that appellant would be
confined through July 12, 2013.  Tex. Fam. Code Ann. § 161.001(1)(Q); In re A.V., 113 S.W.3d at 360–61.

         
Appellant was sentenced to four years’ confinement on July 27, 2011,
and his projected release date at the time of trial was July 7, 2015. 
Appellant testified that he had been denied parole and that his case would not
be further considered until March 2013; if he were granted parole at
that time, he would be released in March or April 2013.  But the supreme
court has held that because parole is inherently speculative, the possibility
of a parent being granted parole within the requisite two-year period does not
render otherwise clear and convincing evidence under (Q) insufficient,
especially in light of multiple prior convictions and a previous denial of parole. 
In re H.R.M., 209 S.W.3d 105, 109 (Tex. 2006); In re R.A.L.,
291 S.W.3d 438, 443–44 (Tex. App.––Texarkana 2009, no
pet.).  Given appellant’s past criminal
history and his prior denial of parole, there is sufficient evidence supporting
a finding that appellant would be confined through July 12, 2013.

Once
the Department has established that a parent’s knowing
criminal conduct resulted in his or her incarceration for more than two years,
the burden shifts to the parent to produce some evidence as to how he or she
will arrange to provide care for the child during that period.  In re S.S.A., No. 02-11-00180-CV, 2012 WL 2923285, at *8
(Tex. App.––Fort Worth July 19, 2012, no pet.) (mem. op.); In re Caballero, 53 S.W.3d
391, 396 (Tex. App.––Amarillo 2001, pet. denied). When
that burden of production is met, the Department then has the burden of
persuasion that the arrangement would not satisfy the parent’s duty to the
child.  In re S.S.A., 2012 WL 2923285, at
*8; In re Caballero, 53 S.W.3d at 396; see
also In re H.R.M., 209 S.W.3d
at 110 (“Terminating parental rights under subsection Q requires that the
parent be both incarcerated or confined and unable to care for the child
for at least two years from the date the termination petition is filed.”).

Appellant
testified that his preference was for K.G.B. to be
placed with his uncle, appellant’s brother.  But appellant also testified
that he could not provide for K.G.B. with a home or
financial support.  A Department caseworker testified that she interviewed
K.G.B.’s paternal grandmother and his older sister
and that neither home was suitable for placement.  She further testified
that she was considering at the time of trial placement with appellant’s
brother and his wife; however, the wife had a CPS history with a reason-to-believe
finding.  The caseworker testified that she nevertheless was going to
pursue her supervisors’ approval to do a home study for placement with
appellant’s brother and his wife.  She testified that they would be “more
than willing to take [K.G.B.] in” and that she
thought he and his wife would be amenable to adopting K.G.B. 
The caseworker said that if K.G.B.’s parents’
rights were not terminated, thus allowing him to be adopted, he would most
likely age out of the foster system, which was an undesirable result and not in
K.G.B.’s best interest.[2]

Although
there was evidence that appellant’s brother was willing to care for K.G.B., there is no evidence that such care would be on
appellant’s behalf[3]
during his incarceration.  See In re H.R.M.,
209 S.W.3d at 110.  In
fact, there was some evidence indicating that appellant’s brother would be
willing to adopt K.G.B.  And at the time of
trial, there was no guarantee that appellant’s brother’s home would be a
suitable placement.  Accordingly, we conclude and hold that the evidence
is both legally and factually sufficient to support termination under
subsection (Q).  See id.; In re K.N.N.,
No. 09-11-00317-CV, 2011 WL 5989007, at *4 (Tex. App.––Beaumont Dec. 1, 2011,
no pet.) (mem.
op.).  We overrule appellant’s third issue.

Because
the Department must prove termination under only one ground, we need not
address his first, second, and fourth through sixth issues because they involve
alleged errors concerning other termination grounds.  See In re A.J.M., 375 S.W.3d 599, 609
(Tex. App.––Fort Worth 2012, pet. denied) (en banc op. on reh’g).

Having
overruled appellant’s dispositive issue, we affirm the trial court’s
order.  See Tex. R. App. P. 47.1.

 

PER CURIAM

 

PANEL: 
LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

 

DELIVERED:  November
15, 2012














[1]See
Tex. R. App. P. 47.4.





[2]K.G.B. was almost fourteen years old at the time of trial
in July 2012.





[3]The
caseworker testified that K.G.B. would like to live
with his uncle.  In contrast, the CASA worker testified that K.G.B. had told him that he did not want to see his father
again because he had seen his father choking his mother.