In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO.  09-13-00289-CV
NO.  09-13-00290-CV

_____


IN THE INTEREST OF C.G., B.G., R.S. JR., AND D.S.

AND

IN THE INTEREST OF J.F.S.


On Appeal from the County Court at Law
Polk County, Texas
Trial Cause Nos. PC05350 and PC05442


MEMORANDUM OPINION

These cases concern the termination of the parental rights of three adults and the decision by the trial court that terminating the parents' rights was in the best interest of five children. In Cause Number PC05350, the trial court signed an order terminating the rights of B.L. (Betty)[1] to four of her minor children, C.G.,

_____

[1]To protect the identities of the minors involved in these termination cases, we identify the parents by aliases and the minors by initials. *See* Tex. R. App. P. 9.8.

1

B.G., R.S. Jr., and D.S. In the same case, the court terminated the rights of A.G. (Adam) to his minor children, C.G. and B.G., and terminated the rights of R.S. (Richard) to two of his minor children, R.S. Jr. and D.S. In Cause Number PC05442, the trial court signed an order terminating Betty's and Richard's parental rights to J.F.S.

In each of the cases, the trial court found, by clear and convincing evidence, that statutory grounds existed for the terminations and that terminating the parent-child relationships was in each child's best interest. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (K), (N), (O), (Q), (2) (West Supp. 2013). Betty, Richard, and Adam appealed. In Cause Number PC05350, we affirm the trial court's order of termination, and we dismiss Adam's appeal. In Cause Number PC05442, we affirm the trial court's order of termination.

Adam's Appeal

Adam failed to perfect a timely appeal from the trial court's order of termination, which is dated June 20, 2013. *See* Tex. R. App. P. 26.1(b), 28.1(a), (b). Also, Adam's notice of appeal, filed on July 29, 2013, was not filed within the period in which we can grant an extension of time to perfect an appeal.[2] *See* Tex.

---

[2]We denied Adam's motion for an extension of time to file his notice of appeal in an order dated August 22, 2013. Because Adam failed to timely appeal,

R. App. P. 26.3. We dismiss Adam's appeal as untimely. *See* Tex. R. App. P. 25.1(b).

Richard's Appeal

After timely perfecting his appeal, Richard filed a motion asserting that a court in Oklahoma, having made an initial child custody determination with respect to R.S. Jr. and D.S., had exclusive jurisdiction over decisions concerning them to the exclusion of the trial court in Polk County, Texas. According to

---

we also deny his Motion to Dismiss. In his motion, Adam requests that we order the case involving his children dismissed for lack of jurisdiction. In light of his untimely appeal, if Adam wishes to pursue his challenge to the trial court's exercise of jurisdiction over C.G. and B.G. in Cause Number PC05350, and before we may consider his claim that the trial court was without jurisdiction to modify the Oklahoma court's prior child custody determination, he must collaterally attack the trial court's order of termination or pursue a bill of review. *See generally In re E.R.*, 385 S.W.3d 552, 566 (Tex. 2012) (stating that if service was invalid, section 161.211 of the Texas Family Code does not bar a collateral attack after the sixth month after the date the order was signed because the resulting judgment is void); *Caldwell v. Barnes*, 154 S.W.3d 93, 96-98 (Tex. 2004) (noting elements necessary to demonstrate that a party is entitled to relief in a bill of review proceeding); *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994) (noting that in a collateral attack a party must show that the underlying judgment is void). Additionally, we note that Betty does not challenge the trial court's jurisdiction. But, even if she had, Adam attached a certified copy of the Oklahoma court's order terminating his parental rights to C.G. and B.G. to his motion to dismiss. We judicially notice the certified copy of the Oklahoma court's order terminating his rights. *See* Tex. R. Evid. 201. Accordingly, the record shows that Adam was not presently a parent of either C.G. or B.G. who was residing in Oklahoma when the Department initiated the modification proceeding at issue. *See* Tex. Fam. Code Ann. § 161.206(b) (West 2008); s*ee also id.* § 101.024(a) (West 2008). For that additional reason, Adam's motion to dismiss is denied.

3

Richard's motion to dismiss, the trial court in Texas was without jurisdiction to act on the Department's petition.

The construction of the "home state" provision in section 152.201 of the Texas Family Code is a question of law that we review *de novo*. *See Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005); *see also* Tex. Fam. Code Ann. § 152.201 (West 2008). With respect to modifying custody orders of other states, the Texas Family Code provides that courts authorized under Texas law to establish, enforce, or modify child custody determinations have the authority to modify a child custody determination made by a court of another state if (1) the court in this state has jurisdiction to make an initial determination, and (2) the court in this state "determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state." Tex. Fam. Code. Ann. § 152.203 (West 2008); *see also id.* § 152.102(6) (West 2008).

The record in the trial court shows that the district court in Polk County possessed jurisdiction with respect to making an initial child custody determination. *See id.* § 152.201. The evidence further shows that Texas was R.S. Jr.'s and D.S.'s home state because both children had been living with a parent in Texas for at least six consecutive months before February 2012, the date the child custody proceedings in Texas commenced. *See id.* §§ 152.102(7), 152.201(a)(1) (West 2008). There is also evidence in the record supporting the trial court's

4

determination that R.S. Jr.'s and D.S.'s parents, Richard and Betty, do not presently reside in Oklahoma.[3] *See id.* § 152.203(2). We conclude the evidence in the record established that the trial court had jurisdiction to modify the Oklahoma court's prior custody determination affecting R.S. Jr. and D.S. *See id.* § 152.203; *In re S.C.S.*, No. 05-06-01600-CV, 2008 WL 1973570, at *2 (Tex. App.—Dallas May 8, 2008, no pet.). We deny Richard's motion to dismiss.

In the sole issue raised in both of Richard's briefs that address the termination of his parental rights to his children, Richard asserts his trial counsel was ineffective because his counsel failed to file an answer "denying paternity, admitting paternity, or a Counter-petition seeking to establish or exclude [him] as the father of [R.S. Jr., D.S., and J.F.S.]." To establish ineffective assistance of counsel, Richard must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *See In re J.P.B.*, 180 S.W.3d 570, 574 (Tex. 2005); *see also Strickland v. Washington*, 466 U.S. 668, 687

---

[3]The record shows that Betty, but not Richard, filed a general request that asked the trial court to state its findings and conclusions in writing; however, Betty did not specify that she wanted findings or conclusions on any specific issue, such as whether any person acting as a parent presently resided in Oklahoma. Among the trial court's findings and conclusions is a recital stating that the trial court had jurisdiction over the subject matter and all parties. After the trial court filed its findings and conclusions, no party asked the trial court to make any additional findings or conclusions; therefore, any omitted findings that are supported by the evidence are deemed to be "supplied by presumption in support of the judgment." Tex. R. Civ. P. 299.

(1984). To prevail on appeal, Richard is required to show that his representation fell below an objective standard of reasonableness, and he must also demonstrate a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 688, 694; *In re M.S.*, 115 S.W.3d 534, 544-45 (Tex. 2003). In considering whether counsel's performance was deficient, we consider all of the circumstances that surround the case, and we "primarily focus on whether counsel performed in a 'reasonably effective' manner." *M.S.*, 115 S.W.3d at 545. Our review of counsel's performance is highly deferential, and we presume that counsel's conduct fell within the range of reasonable professional assistance, which includes "the possibility that counsel's actions [were] strategic." *Id.* "'An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 622-23 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *In re K.K.*, 180 S.W.3d 681, 685 (Tex. App.—Waco 2005, no pet.)).

Because the trial court's findings and conclusions include several grounds—as alleged in the Department's petitions—justifying the termination of Richard's parental rights, and the best interest finding is not premised solely on the ground that Richard failed to timely respond to the Department's petitions, it appears the trial court would have still terminated Richard's parental rights even had he timely

responded to the Department's petitions. *See* Tex. Fam. Code Ann. § 161.002(b) (West 2008) (allowing termination of an alleged father's parental rights for failing to respond by timely filing an admission of paternity or a counterclaim for paternity). The trial court also found that termination of Richard's parental rights was in each child's best interest. Given the trial court's findings, we conclude the trial court would terminate Richard's parental rights in another trial. For example, the Department's pleadings, the evidence admitted during the trial, and the trial court's findings reflect that Richard has been sentenced to serve a term of life in prison for burning the family's residence, that he had knowingly placed or allowed his children to remain in conditions or surroundings that endangered their physical or emotional well-being, that he did not regularly visit or maintain contact with his children, that he did not demonstrate that he had the ability to provide them with a safe environment, that he had failed to comply with the provisions of a court order establishing the actions he needed to take to obtain the return of his children, and that it was in the best interest of the children to terminate Richard's parental rights. These findings, independent of Richard's counsel's failure to admit paternity or file a counter-petition, are findings that the trial court could have used as the grounds to terminate Richard's parental rights. *See id.* § 161.001 (West Supp. 2013). They are also not challenged in the appeal.

Under *Strickland's* second prong, we must determine whether counsel's defective performance caused Richard harm. *See Strickland*, 466 U.S. at 687, 694. The test we apply is whether "'there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different.'" *M.S.*, 115 S.W.3d at 549-50 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). Given the trial court's findings favorable to the Department's claim that Richard's rights should be terminated, as well as the trial court's finding that the terminations were in each child's best interest, we are not persuaded that Richard's parental rights would not have been terminated had Richard's trial counsel filed a timely response to the Department's petitions. In our view, the record is sufficient to demonstrate that the trial court would have terminated Richard's parental rights on the other grounds of termination that are supported by the Department's pleadings and the evidence admitted during the trial.

We conclude that Richard has not demonstrated on this record that he was harmed because his attorney failed to timely respond to the Department's petitions. We overrule the sole issue that Richard has raised in each of his appeals.

Betty's Appeal

Betty raises two identical issues in her appeals: (1) whether the evidence is legally and factually sufficient to support the orders terminating her parental rights

to her five children, C.G., B.G., R.S. Jr., D.S., and J.F.S.; and (2) whether she was denied the effective assistance of counsel at trial. In a legal sufficiency review of an order terminating parental rights, we review all the evidence from the trial "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). With respect to Betty's factual sufficiency argument, we must "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. Under a factual sufficiency standard, the findings the trial court made are sufficient unless, based on the entire record, the disputed evidence that could not have been credited in favor of the finding is so significant that the trial court could not have reasonably formed a firm belief or conviction that the fact at issue was true. *See id.*

During the trial, the Department bore the burden of proving, by clear and convincing evidence, that the parent engaged in certain proscribed conduct as specified in the Family Code. *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012). The Department also bore the burden of proving by clear and convincing evidence that a decision to terminate Betty's rights was in each child's best interest. *See id*. The Family Code defines clear and convincing evidence as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. §

101.007 (West 2008). Based on the Department's pleadings, the trial court could terminate Betty's parental rights if the Department proved by clear and convincing evidence that: (1) she committed one of the statutory grounds for termination found in section 161.001(1) of the Family Code, and that (2) termination was in each child's best interest. *See id.* § 161.001(1), (2). Betty challenges both the trial court's findings that she committed statutory violations and the trial court's findings that the terminations were in each child's best interest.

The trial court terminated Betty's parental rights on six grounds, including that Betty constructively abandoned her children and had knowingly engaged in criminal conduct, was convicted and imprisoned, resulting in her being unable to care for her children for a period that extended through February 7, 2014. *See id.* § 161.001(1)(N), (Q). The trial court also found that the terminations of Betty's parental rights were in each child's best interest. *See id.* § 161.001(2). Based on its findings, the trial court terminated Betty's parent-child relationships with C.G., B.G., R.S. Jr., D.S., and J.F.S.

Section 161.001(1)(Q) of the Family Code provides that a trial court may terminate a parent's rights to her child if the parent has "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition[.]" *See id.* § 161.001(1)(Q). Section

10

161.001(1)(Q) applies prospectively, thus "'if the parent is convicted and sentenced to serve at least two years and will be unable to provide for his or her child during that time, the State may use subsection Q to ensure that the child will not be neglected.'" *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (quoting *In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003)). Although parole decisions are inherently speculative, evidence that a parent might be paroled is relevant in determining whether a parent will be released. *Id.* at 109. However, the mere introduction of evidence regarding possible parole dates does not prevent a factfinder from forming a firm conviction or belief that the parent will remain incarcerated for the two-year period at issue. *Id.*

Having reviewed the testimony from the trial, we conclude that there is sufficient evidence in the record to support the trial court's determination that Betty knowingly engaged in criminal conduct which resulted in her conviction. The record shows that Betty was arrested for possession of methamphetamine in February 2012. At trial, Betty admitted that on the day she was arrested, she had methamphetamine in her purse and that she was using methamphetamine. Based on Betty's plea bargain agreement for possessing methamphetamine, the trial court sentenced Betty to an eight-year prison sentence; then, the trial court probated Betty's sentence and placed her on probation. The trial court also heard testimony from another witness who testified that in December 2012, Betty violated the terms

11

of the trial court's probation order, that she was arrested and then incarcerated, and that she has been incarcerated since December.

According to Betty, she is currently serving an eight-year sentence; absent her release on parole, she will not be released until the latter part of 2019. Although Betty testified that she expected to be released on parole in September 2013, she also acknowledged that she might not be paroled. The evidence admitted during the trial about when Betty will be released conflicted. Weighing all of the evidence, and giving due deference to the trial court's findings, we conclude the trial court could reasonably form a firm conviction that Betty, due to her incarceration, would not be able to care for her children during the two-year period at issue. *See id*; *see also* Tex. Family Code Ann. § 161.001(1)(Q) .

After the Department established that Betty's knowing criminal conduct resulted in her incarceration for the period at issue, the burden shifted to Betty to produce evidence showing that she had arranged to take care of her children while incarcerated. *See In re H.R.M.*, 209 S.W.3d at 110; *In re Caballero*, 53 S.W.3d 391, 396, 397-98 (Tex. App.—Amarillo 2001, pet. denied). In part, Betty points to the testimony of her sister to support her claim that she made adequate arrangements for her children to be cared for while she was incarcerated. However, there was evidence admitted during trial that one of Betty's children was physically abused by Betty's sister during a prior placement. In her testimony,

12

Betty's sister also implies that she would rely on Betty's mother and father in caring for Betty's children.

Betty also points to the testimony of her parents to show that she made arrangements for her children to be cared for while she was incarcerated. While Betty's mother testified that she was willing to get a home study done on her home, she agreed that she had not talked with the Department about taking any of Betty's children. Also, Betty's mother's testimony about her willingness to care for the children was equivocal, as she testified that she could "[p]robably[]" take the oldest two children. The testimony of Betty's father implies that the care of Betty's children would be left to three people; him, Betty's mother, and Betty's sister. Betty agreed that none of her family members would be able to care for all of her children. The testimony of Betty and her family members does not address how Betty's children would be cared for if she did not obtain her release on parole. Considering all of the testimony, the trial court could reasonably conclude that Betty's family had not made any concrete plans to care for Betty's children in the event she failed to obtain her release on parole.

The Department presented evidence that supports the trial court's conclusion that Betty's proposal to allow her parents and her sister to care for her children was inadequate. The Department provided the trial court with testimony that Betty's children, after being placed with Betty's sister, were removed from that home due

to the physical abuse of one of the children. Because of the prior allegation of abuse, the Department determined that Betty's sister was not a suitable placement for the care of Betty's children. There was also evidence supporting the trial court's conclusion that Betty's children would not receive adequate care if placed with Betty's parents. According to the Department, when they contacted Betty's parents, the Department was told that the parents were not in a position to take care of Betty's children. Betty's parents also did not name other family members who were interested in caring for Betty's children. Additionally, the Department presented evidence showing that Betty's parents intended to involve Betty's sister in caring for Betty's children if they were placed with them; yet, the Department ruled out Betty's sister as a placement because of the prior allegation of physical abuse involving one of Betty's children.

Having carefully reviewed all of the evidence under the standard for legal and factual sufficiency, we conclude the trial court could reasonably form a firm belief or conviction that Betty violated section 161.001(1)(Q) by knowingly engaging in criminal conduct resulting in her conviction, imprisonment, and inability to care for her children for the two-year period at issue. *See* Tex. Fam. Code Ann. § 161.001(1)(Q). In light of our conclusions that factually and legally sufficient evidence support Betty's termination under section 161.001(1)(Q), we need not address Betty's remaining legal and factual sufficiency arguments, as they

14

relate to the other grounds of termination. *See* Tex. R. App. P. 47.1; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.").

Betty also challenges the legal and factual sufficiency of the evidence to support the trial court's best interest findings. "[T]here is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Nevertheless, a prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2008). In reviewing the trial court's best interest findings, we consider:

(1)     the child's desires;

(2)     the child's emotional and physical needs now and in the future;

(3)     any emotional and physical danger to the child now and in the future;

(4)     the parental abilities of the individuals seeking custody;

(5)     the programs available to assist the individuals seeking custody to promote the best interest of the child;

(6)     the plans for the child by the individuals or agency seeking custody;

(7)     the stability of the home or proposed placement;

(8)     the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and

15

(9)     any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* Tex. Fam. Code Ann. § 263.307(b) (West 2008).

Betty argues that the Department's evidence failed to address several of the *Holley* factors. However, the absence of evidence about some of the considerations that may factor into a best interest determination does "not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

The trial court in this case considered testimony that bore on the interests of the children in terminating or preserving Betty's parental rights. There was evidence that Betty had not seen her children since September 2012, when she violated the terms of her probation by leaving the State of Texas and moving to Oklahoma. There was also evidence that the children were happy with their placement in foster care, that they were receiving the services that they needed, and that they were doing well. Witnesses from the Department, as well as the CASA volunteer, expressed their opinions that the children's best interests would be served by terminating Betty's parental rights.

There was also evidence from which the court could have inferred that Betty had poor parenting skills. There was testimony that Betty used methamphetamine while she was pregnant with J.F.S. and while her other children were under her supervision, and that she was using methamphetamine when the house in which the family lived caught fire. Additionally, the trial court could have viewed Betty's plans for the children as short-range, as her plans depended on her release on parole. Additionally, Betty's plans envisioned that three of her children would be taken care of by her sister, although her children's prior placement with her sister had proven unsuccessful due to an allegation of physical abuse. The trial court could have viewed Betty's short-range plans as inadequate, and Betty never clearly defined a plan that considered she might remain incarcerated until 2019.

On this record, it was reasonable for the trial court to view the Department's plan for foster care with a goal of adoption as the plan that better served each child's best interest. We conclude that the trial court, on this record, could reasonably form a firm conviction or belief that termination of Betty's parental rights was in the best interest of each child. We overrule Betty's first issue in both of her appeals.

In issue two in both of her appeals, Betty contends she received ineffective assistance of counsel at trial because her counsel failed (1) to object to testimony regarding the results of a positive methamphetamine test, (2) to object to the

Department calling her as a witness, (3) to advise her to invoke her Fifth Amendment right against incrimination, (4) to object to questions concerning her drug use while she was pregnant, and (5) to request that counsel be allowed to be present when the trial court interviewed B.G. in chambers.

The trial court did not conduct an evidentiary hearing on Betty's motion for new trial, so there is no explanation regarding the reasons for counsel's alleged inactions. *See Walker*, 312 S.W.3d at 623 ("We may not speculate to find trial counsel ineffective when the record is silent regarding counsel's reasons for his actions."). Additionally, Betty has failed to demonstrate that the outcome of the termination proceeding would have been different had trial counsel provided the advice that appellate counsel suggests she should have gotten. *See Strickland*, 466 U.S. at 694. Even without Betty's testimony, the record contains evidence that Betty failed to comply with the provisions of her court ordered family service plan for a period of not less than nine months. *See* Tex. Fam. Code Ann. § 161.001(1)(O). Because Betty's claims are not firmly founded in the record, and she has not shown that the result in her case would have been different, she has not shown that she is entitled to relief on her ineffective assistance claim. We overrule Betty's second issue in both of her appeals.

18

## Conclusion

For the reasons we have explained, we dismiss Adam's untimely appeal, and we deny his motion to dismiss. We further conclude the trial court had jurisdiction to modify the Oklahoma court's prior child custody determination that concerned C.G., B.G, R.S. Jr., and D.S.; therefore, we deny Richard's motion to dismiss. As we are not persuaded that Richard demonstrated that he received ineffective assistance of counsel, his sole issue in both appeals is overruled. Finally, based on our conclusion that the evidence is legally and factually sufficient to support the trial court's orders of termination and that Betty's ineffective assistance issue is without merit, we overrule both of Betty's issues in her appeals. In accordance with these rulings, we affirm the trial court's orders of termination.

Trial Cause Number PC05350 AFFIRMED, APPEAL DISMISSED as to A.G.

Trial Cause Number PC05442 AFFIRMED.

 

 

_____
HOLLIS HORTON
Justice

Submitted on October 17, 2013
Opinion Delivered December 12, 2013

Before McKeithen, C.J., Kreger and Horton, JJ.

19