In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00473-CV**

_____

**IN THE INTEREST OF A.R., L.R., AND R.Q. JR.**

**On Appeal from the 279th District Court**
**Jefferson County, Texas**
**Trial Cause No. C-222,691**

**MEMORANDUM OPINION**

Appellant (the Father) appeals the trial court's order terminating his parental

rights to A.R. and L.R.[1] In three issues, the Father challenges the legal and factual

sufficiency of the evidence to support the trial court's finding that he violated

subsections (D), (E), and (Q) of section 161.001(b)(1) of the Texas Family Code.

In this appeal, the Father does not challenge the sufficiency of the evidence that

[1] To protect the identity of the minors, we have not used the names of the children, parents, or other family members. *See* Tex. R. App. P. 9.8.

termination is in the best interest of the children. We affirm the trial court's judgment.[2]

## Burden of Proof and Standards of Review

Parental rights can be terminated upon proof by clear and convincing evidence that the parent has committed an act prohibited by section 161.001(b)(1) of the Texas Family Code, and termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(1), (2) (West Supp. 2015); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West

---

[2] A.R. and L.R.'s mother (the Mother) signed an affidavit voluntarily relinquishing her rights to A.R., L.R., and R.Q. Jr. The trial court accepted the Mother's affidavit and terminated the Mother's parental rights to A.R., L.R., and R.Q. Jr. The Mother has not appealed that determination.

R.Q. Jr.'s biological father is R.Q., who signed an affidavit voluntarily relinquishing his rights to R.Q. Jr. The trial court accepted R.Q.'s affidavit and terminated R.Q.'s parental rights to R.Q. Jr. R.Q. has not appealed that determination. Thus, R.Q. Jr. is not subject to this appeal.

2014). This is an intermediate standard and falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard in criminal proceedings. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979); *In re D.T.*, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh'g). Therefore, the proof must be more than merely the greater weight of the credible evidence, but need not be unequivocal or undisputed. *Addington*, 588 S.W.2d at 570. This heightened burden of proof results in a heightened standard of review. *In re J.F.C.*, 96 S.W.3d at 265–66.

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence in a parental termination case, we "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d at 266. We must

3

determine "'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'" *Id*. (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id*. at 109.

### Grounds for Termination

After a bench trial, the trial court signed an order terminating the parental rights of the Father to A.R. and L.R. on October 27, 2015. The Father timely appealed the trial court's order. The Father contends that the evidence is legally and factually insufficient to support the trial court's findings that he violated subsections (D), (E), and (Q) of section 161.001(b)(1) of the Texas Family Code. The trial court found that the Father (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children; (2) engaged in conduct or knowingly

4

placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children; and (3) knowingly engaged in criminal conduct that resulted in the parent's conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of filing the petition. For the reasons we discuss below, we conclude that the record contains clear and convincing evidence to support the trial court's finding under section 161.001(b)(1)(Q). *See* Tex. Fam. Code Ann. § 161.001 (b)(1)(Q).

Section 161.001 (b)(1)(Q) of the Texas Family Code provides that the trial court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition[.]" *Id*.

The Department filed the petition for termination on December 16, 2014. At that time, the Father was incarcerated, serving an eight-year sentence for intoxication manslaughter. The Father began serving his sentence on May 6, 2013. According to the CPS supervisor, the Father's sentence will not expire until March 14, 2020. She testified that the Father will go before the parole review board in

2016; however, the review board has previously denied the Father parole due to the severity of the offense made the basis of his conviction.

On appeal, the Father contends that he could potentially be paroled in 2016. While evidence of parole availability is relevant to determine whether a parent will be released within two years, "[m]ere introduction of parole-related evidence . . . does not prevent a factfinder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years." *H.R.M.*, 209 S.W.3d at 109. The Department need not show that a parent has no possibility of an early release because that type of requirement "would impermissibly elevate the burden of proof from clear and convincing to beyond a reasonable doubt." *Id.* Here, the Father received an eight-year sentence, which will not expire until 2020. The Father's early release is inherently speculative and entirely within the discretion of the parole board, which has previously denied the Father parole. *See Ex parte Moussazadeh*, 361 S.W.3d 684, 690 (Tex. Crim. App. 2012). There is no evidence in the record that the Father will be released on parole before completing his full sentence. As the factfinder, the trial court could have formed a firm conviction or belief that the Father will remain incarcerated for at least two years from the date the Department filed its petition. *See In re H.R.M.*, 209 S.W.3d at 109.

Next, the Father argues that the State failed to prove with sufficient evidence that he "knowingly" engaged in criminal conduct that resulted in his conviction. The Father testified that he was currently incarcerated because he "had a car accident where [he] accidentally ran a man over" and killed him. In his testimony before the trial court, the Father admitted that he had marijuana in his system at the time of the accident but denied that he was intoxicated. The Father admitted that he pled guilty to the offense of intoxication manslaughter and was convicted for that offense. The Father testified that at the time of the accident, L.R. was in the car with him. According to the Father, the accident occurred, not because he was intoxicated, but because he reached to the backseat floorboard of his vehicle to retrieve L.R.'s bottle, causing him to swerve off the road and hit a pedestrian. Relying on *In re C.D.E.*, 391 S.W.3d 287 (Tex. App.—Fort Worth 2012, no pet.), the Father contends that the State had to show more than just that he had been convicted for intoxication manslaughter because that offense requires no proof of a culpable mental state. He contends he did not knowingly commit the criminal conduct that resulted in his conviction but that he was only negligent.

In *C.D.E.*, the parent was serving a thirty-year sentence for intoxication manslaughter. 391 S.W.3d at 291. During the termination hearing, the parent admitted that he had consumed a full bottle of Seagrams 7, but he claimed that

prior to that day he had never consumed hard liquor and did not drink on a regular basis. *Id*. The parent denied that he was intoxicated at the time of the accident. *Id*. The parent only had one prior misdemeanor conviction for criminal trespass-entry, which was committed before the birth of his first child. *Id*. at 293.

In construing the meaning of the word "knowingly" in the statute, the Fort Worth Court of Appeals held that "to establish that a parent 'knowingly engaged in criminal conduct' as set forth in subsection (Q), the Department must prove more than mere negligence." *Id.* at 300. The court found that the Department offered little more than the parent's intoxication manslaughter conviction, explaining that the only evidence was that the parent did not drink hard liquor, did not drink on a regular basis, denied he was intoxicated at the time of the accident, and claimed his conduct was accidental. *Id*. The Department presented no evidence of the actual amount of alcohol the parent drank, no evidence of when the parent consumed the alcohol in connection with when the accident occurred, no evidence regarding whether the parent had committed a traffic offense in connection with the accident, and no evidence of the parent's blood-alcohol level. *Id*. The court concluded that under these circumstances, the record contained no evidence from which the trial court could have formed a firm conviction or belief that the parent knowingly, as

opposed to negligently, engaged in the criminal conduct that resulted in his conviction for a strict-liability offense of intoxication manslaughter. *Id.* at 301.

In this case, the Father testified that leading up to the accident, he had smoked marijuana every other day. During cross-examination, the Father admitted that he reported to his probation officer not that he smoked marijuana every other day, but that he smoked marijuana on a daily basis. And, he testified that he regularly smoked marijuana while operating a motor vehicle. The Father also admitted that he committed a traffic offense in connection with the accident because he testified that he swerved off the roadway and hit a man standing on the side of the road.

In this case, not only did the Department enter evidence of the Father's intoxication manslaughter conviction, but the Department also entered into evidence an affidavit from one of the officers that responded to the fatality accident caused by the Father. In the affidavit, the officer stated that after the accident, the Father admitted that he had used a small amount of marijuana and had consumed one Soma. The officer stated the Father displayed signs of intoxication, was unsteady on his feet, and had slurred speech. According to the affidavit, the drug recognition expert conducted various Standardized Field Sobriety Tests (SFST) on the Father and noted several clues of intoxication. The affidavit also indicated that

9

the Father failed to identify himself several times, giving the officers a false identity. We conclude there is sufficient evidence in the record from which the trial court could have concluded by clear and convincing evidence that the Father knowingly drove while intoxicated and was convicted and imprisoned for that conduct.

Once the Department established that the Father knowingly engaged in criminal conduct resulting in his conviction and confinement for at least the two-year period after the filing of the petition, the burden shifted to the Father to produce some evidence showing that he had made arrangements for the care of the children during his imprisonment. *See In re Caballero*, 53 S.W.3d 391, 396 (Tex. App.—Amarillo 2001, pet denied). Here, the Father admitted that, from the time he was incarcerated, he has been unable to do or provide anything for his children. He testified that his parents help him out and give his children what they need. He testified that he told the Mother that she should go to his parent's house to get help, but the Mother refused their help. The Father also testified that he thought R.Q. was taking care of the Mother and providing for the children.

There is no testimony in the record that the Father arranged for R.Q. to provide for the Father's children on his behalf while he was in prison. In fact, the Father admitted that he had never met R.Q. We also note that the Father's

testimony is inconsistent regarding his efforts or beliefs regarding the provision of care for his children. The Father testified that his parents were providing for the children's needs, but later admitted that the Mother refused his parents' help. The father also testified that he thought R.Q. was providing for his children's needs. Even though the Father claimed that his parents had helped meet the needs of the children, no other witness offered testimony to support his statement. Notably, the Father did not testify that his parents agreed to provide for the children on the Father's behalf. The Father's testimony alone does not render the evidence insufficient to support the trial court's finding that he was unable to care for the children. *See H.R.M.*, 209 S.W.3d at 110 (citing *Caballero*, 53 S.W.3d at 396). We find no evidence in the record that the Father made any arrangements to care for the children during his confinement.

"Absent evidence that the non-incarcerated parent agreed to care for the child on behalf of the incarcerated parent, merely leaving a child with a non-incarcerated parent does not constitute the ability to provide care." *H.R.M.*, 209 S.W.3d at 110. Here, the evidence supports that the Father left the children with the Mother, who failed to properly care for the children. There is no evidence, however, that the Mother agreed to care for the children on the Father's behalf.

11

The Father failed to meet his burden to show that he made arrangements for the care of the children during his imprisonment.

Viewing the evidence in the light most favorable to the trial court's finding under subsection 161.001(b)(1)(Q), we conclude that the trial court reasonably could have formed a firm belief or conviction that the Father knowingly engaged in criminal conduct that resulted in his conviction, imprisonment, and inability to care for his children for not less than two years from the date of the Department's filing of the petition seeking termination. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(Q). Based on our review of the entire record, we further conclude that the evidence is also factually sufficient to support the trial court's finding under section 161.001(b)(1)(Q). *See In re C.H.*, 89 S.W.3d at 25. We overrule the Father's third issue.

We need not address the sufficiency of the evidence to support a violation of subsections (b)(1)(D), or (E). *In re D.S.*, 333 S.W.3d 379, 388 (Tex. App.—Amarillo 2011, no pet.) ("If multiple predicate grounds are found by the trial court, we will affirm based on any one ground because only one is necessary for termination of parental rights.").

Having overruled all of the Father's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on February 22, 2016
Opinion Delivered April 14, 2016

Before Kreger, Horton, and Johnson, JJ.