**Opinion issued June 21, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00633-CV

———————————

## IN THE INTEREST OF H.O., A Child

———————————

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-00350J**

———————————

## O P I N I O N

We withdraw our February 6, 2018 opinion and judgment and issue this

opinion and judgment in their stead.[1] Our disposition remains unchanged.

---

1   Appellant W.H.O., who is represented by appointed appellate counsel, filed a pro se motion for rehearing and en banc reconsideration of our February 6, 2018 opinion. Appellant is not entitled to hybrid representation. *See In re D.W.*, 445 S.W.3d 913, 915 n.1 (Tex. App.—Dallas 2014, pet. denied) (declining to consider

In this parental-rights termination case, appellant W.H.O. (Father) appeals the trial court's decree terminating his parental rights to his daughter, H.O. In two issues, Father contends that the Department of Family and Protective Services (DFPS) presented factually insufficient evidence to support the trial court's statutory predicate findings under Family Code sections 161.001(b)(1)(E) and (Q).

We affirm.

## Background

M.H. (Mother) gave birth to H.O. on December 26, 2015.[2] Mother had overdosed on Nyquil during her pregnancy, which led to a placenta abruption and H.O.'s premature birth. Both Mother and H.O. tested positive for amphetamines at the time of birth, and H.O. was diagnosed with metabolic acidosis and respiratory distress. DFPS received a referral concerning this case two days after H.O.'s birth.

On January 22, 2016, nearly one month after H.O.'s birth, DFPS filed suit seeking emergency possession of H.O., appointment as H.O.'s temporary sole

---

pro se brief filed by mother in parental-rights termination case when her appointed counsel had filed brief on her behalf); *In re R.A.P.*, No. 14-06-00109-CV, 2007 WL 174376, at *1 n.1 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (mem. op.) (holding same); *Posner v. Dallas Cty. Child Welfare Unit of Tex. Dep't of Human Servs.*, 784 S.W.2d 585, 588 (Tex. App.—Eastland 1990, writ denied) ("We hold that in civil cases as in criminal cases an appellant is not entitled to hybrid representation.").

[2] DFPS sought termination of Mother's parental rights as well as Father's. Mother signed an affidavit voluntarily relinquishing her parental rights to H.O., and the trial court terminated her parental rights on this basis. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(K) (West Supp. 2017). Mother is not a party to this appeal.

managing conservator, adjudication of Father's parentage, and termination of Mother's and Father's parental rights to H.O. DFPS initially sought termination of Father's parental rights under Family Code section 161.001(b)(1)(D), (E), (N), and (O). DFPS's petition was accompanied by an affidavit completed by caseworker Danielle Prejean, who set out facts relevant to H.O.'s initial referral to DFPS. Prejean also averred that Father admitted to her that he had a criminal history, including a burglary conviction in Illinois, but he denied using illegal drugs. She averred that she repeatedly told Father that he and Mother needed to take a drug test before the hospital would discharge H.O. to their care, but Father refused to take a drug test. The trial court appointed DFPS as H.O.'s temporary managing conservator, and H.O. was placed with foster parents.

On March 2, 2016, and March 14, 2016, the trial court ordered both Mother and Father to provide a sample for a drug screening. Records from the laboratory conducting the drug test reflected that Father "walked out" before a sample could be collected on March 2, 2016, which DFPS considered to be a "positive" result.[3] Father did submit to drug testing on March 14, 2016, and his hair sample tested positive for amphetamines, cocaine, cocaine metabolites, marijuana, and marijuana metabolites. Another sample, collected the same day, tested positive for

---

[3] At trial, Father disputed this record, testifying that he never refused to take a drug test.

3

amphetamine and methamphetamine, but tested negative for all other drugs.[4]  The trial court also ordered Father to submit to a DNA test, which he did, and which confirmed H.O.'s parentage.

On June 6, 2017, more than a year after the initial referral of H.O., DFPS amended its petition to allege an additional predicate act supporting the termination of Father's parental rights.  Specifically, DFPS alleged that Father had knowingly engaged in criminal conduct resulting in his conviction for an offense and confinement and an inability to care for H.O. for not less than two years from the date of the filing of the petition, pursuant to section 161.001(b)(1)(Q).

The trial court held a bench trial on July 17, 2017.  H.O. was approximately eighteen months old at the time of trial.  The trial court admitted Mother's affidavit voluntarily relinquishing her parental rights, and Mother testified that she freely executed that affidavit and that she believed giving up her parental rights was in H.O.'s best interest.  The trial court also admitted several orders from various status hearings that occurred during the pendency of the case.  These orders included findings by the trial court that DFPS had made sufficient efforts to notify relatives of H.O. that she had been removed from her home and that the court had reviewed DFPS's efforts to identify relatives of H.O. who could provide a safe environment from her if she were not returned to Mother and Father.  *See* TEX. FAM. CODE ANN.

---

[4]     The record does not indicate the source of this sample.

§ 262.1095(a) (West Supp. 2017) (requiring DFPS to notify child's relatives within third degree of consanguinity when DFPS takes possession of child).

Father appeared at the trial and testified that he was arrested for possession of methamphetamine on January 25, 2016, three days after H.O. first came into DFPS's custody.[5] Father pleaded guilty to that offense, and the criminal court signed a judgment of conviction on April 28, 2017, and assessed his punishment at four years' confinement. Father testified that he was "under the impression that non-aggravated cases only do 25 percent [of the assessed sentence] and [that he is] eligible for parole immediately once [he] enter[s] TDC." Father acknowledged, however, that his parole eligibility was not guaranteed and that, hypothetically, he could serve the entire four-year sentence. The trial court entered his judgment of conviction into evidence, and this judgment reflected that Father had credit for time served from January 25, 2016, to February 10, 2016, and from July 20, 2016, to April 28, 2017, or approximately nine and a half months' worth of time credited against his sentence.

Father testified that he had previously been incarcerated in Illinois for three years for a burglary conviction before he was released on parole for that offense.

---

[5] With respect to this offense, Father testified, "I wasn't a user for the most part. I was trying to make money." Father agreed with H.O.'s attorney ad litem that he was initially charged with possession with intent to deliver, but he was able to reach a plea agreement on the lesser charge of possession of methamphetamine. Father also admitted that he was charged with bringing a firearm into a correctional facility, but the record does not reflect the disposition of that offense.

Father's parole was revoked in September 2016, and he stated that he would be discharged from that offense approximately one month from the date of trial, or on August 14, 2017. Father agreed that he was not in a position to take care of H.O. until such time as he obtained parole for the possession of a controlled substance conviction.

On cross-examination, Father testified that he has another child who is in the care of a family friend in Illinois and that he has contact with that child when not incarcerated. He stated that he believed he would "make parole once [he] reach[es] TDCJ] because [he has] not caused any problems since [he has] been [in custody] and it is a minor drug offense." Father also testified that he had lived in the Houston area for around three years and, at the time of his arrest, he had a job in construction putting up drywall. He stated that his mother had told him that he can live with her after he is paroled, and while his mother will not raise H.O. on her own, she will help him raise H.O.

Brian Johnson, the DFPS caseworker assigned to H.O.'s case at the time of trial, testified that H.O. was currently in a foster home placement that was going "very well" and that was meeting her physical and emotional needs. He testified that DFPS's long-term goal for H.O. was unrelated adoption. He stated that DFPS believed termination of Mother's parental rights was in H.O.'s best interest

> [b]ecause at this current time [Mother is] not in a stable home. She's
> homeless at this time. She has an addiction, which she has not yet got

treated and she needs extensive treatment; and she willingly admitted that she has a problem with drugs.

Johnson testified that Mother told him that she had only been clean for one week and that she had first had a problem with abusing prescription medication, but she now has a problem with using methamphetamine.

Johnson also testified that, with respect to Father, DFPS was requesting that the court terminate his parental rights because he would be incarcerated for more than two years and also because his involvement in a "drug lifestyle" endangered H.O. and "doesn't give [Father] the ability to protect the child to provide a safe home environment for the child." Johnson stated:

> [A]t this point in time, [Father is] not able to care for [H.O.] He's not able to provide a stable home environment; he's incarcerated; his decisions in the past also indicate[] that he has not been able to provide a safe, you know, a safe home, a loving home, a healthy home for [H.O.] at the time; and where she is now, that has all been provided and then some.

Johnson testified that H.O.'s foster parents wish to adopt her. He agreed with H.O.'s attorney ad litem that her foster parents have "tremendous plans" for H.O. He stated that H.O. has lived with the foster parents for seventeen of the eighteen months of her life.

H.O.'s foster mother testified that she is doing "fantastic" and that she is developmentally on target for her age. She stated that she and her husband intend to adopt H.O. and that her two biological children "think [H.O.] hung the moon." She

testified that H.O. recently participated in a pony-riding competition and won a prize. She stated that her family has been in contact with H.O.'s maternal grandmother and that they intend to continue that contact. She described H.O. as an "incredibly happy child."

The trial court signed a decree terminating Father's parental rights to H.O. under Family Code section 161.001(b)(1)(E) and (Q). It also found that terminating Father's parental rights was in H.O.'s best interest. The trial court appointed DFPS as H.O.'s sole managing conservator. This appeal followed.

## Sufficiency of Evidence

In his first issue, Father contends that DFPS presented factually insufficient evidence to support the trial court's finding that termination of his parental rights was appropriate under Family Code section 161.001(b)(1)(E). In his second issue, Father contends that factually insufficient evidence supports the trial court's finding that termination of his rights was appropriate under section 161.001(b)(1)(Q).

### A. Standard of Review

A trial court may order termination of the parent-child relationship if DFPS proves, by clear and convincing evidence, one of the statutorily enumerated predicate findings for termination and that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017); *see In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012) (stating that "[t]ermination of parental rights requires

8

proof by clear and convincing evidence" and noting that this "heightened standard of review" is mandated by both Texas Family Code and Due Process Clause of United States Constitution); *see also Santosky v. Kramer*, 455 U.S. 745, 769, 102 S. Ct. 1388, 1403 (1982) (holding that applying clear-and-convincing standard in termination proceedings adequately protects parent's due process rights). DFPS must prove both elements—a statutorily prescribed predicate finding and that termination is in the child's best interest—by clear and convincing evidence. *In re E.N.C.*, 384 S.W.3d at 803. The Family Code defines "clear and convincing evidence" as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re E.N.C.*, 384 S.W.3d at 802.

When a parent challenges the factual sufficiency of the evidence supporting the trial court's findings, we review all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We should inquire whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the allegations. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or

conviction, then the evidence is factually insufficient." *In re J.O.A.*, 283 S.W.3d at 345 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In applying this standard, our review "must not be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt." *In re H.R.M.*, 209 S.W.3d at 108 (quoting *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002)).

"Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Thus, if the trial court finds multiple predicate grounds, we will affirm based on any one ground because only one is necessary for the termination of parental rights. *In re T.G.R.-M.*, 404 S.W.3d 7, 13 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

### B. *Analysis*

Family Code section 161.001(b)(1)(Q) allows termination of the parent-child relationship if the trial court finds, by clear and convincing evidence, that the parent knowingly engaged in criminal conduct that resulted in the parent's (1) conviction of an offense and (2) "confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." TEX. FAM. CODE ANN. § 161.001(b)(1)(Q); *In re A.V.*, 113 S.W.3d at 356. Subsection (Q) applies prospectively and "allows the State to act in anticipation of a parent's abandonment of the child and not just in response to it." *In re A.V.*, 113 S.W.3d at

10

360. "[S]ubsection Q purports to protect children whose parents will be incarcerated for periods exceeding two years after termination proceedings begin." *Id.* at 360–61.

The Texas Supreme Court has recognized that a two-year sentence "does not automatically meet subsection Q's two-year imprisonment requirement" because "[i]n some cases, neither the length of the sentence nor the projected release date is dispositive of when the parent will in fact be released from prison." *In re H.R.M.*, 209 S.W.3d at 108. Courts may consider the availability of parole as evidence relevant to determining whether the parent will be released within two years, but because parole decisions are "inherently speculative" and rest "entirely within the parole board's discretion," the "[m]ere introduction of parole-related evidence . . . does not prevent a factfinder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years." *Id.* at 109.

DFPS must prove both that the parent will be incarcerated or confined *and* is unable to care for the child for at least two years from the date the termination petition is filed. *Id.* at 110; *see In re E.S.S.*, 131 S.W.3d 632, 639 (Tex. App.—Fort Worth 2004, no pet.) ("Proof that [the incarcerated parent] is unable to care for [the child] is an additional requirement not met by showing incarceration alone."); *In re B.M.R.*, 84 S.W.3d 814, 818 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *In re*

11

*Caballero*, 53 S.W.3d 391, 395–96 (Tex. App.—Amarillo 2001, pet. denied). In *In re Caballero*, the Amarillo Court reasoned:

> [O]nce the Department [DFPS] has established a parent's knowing criminal conduct resulting in their incarceration for more than two years, the parent must produce some evidence as to how they would provide or arrange to provide care for the child during that period. When that burden of production is met, the Department would have the burden of persuasion that the arrangement would not satisfy the parent's duty to the child.

53 S.W.3d at 396; *see Hampton v. Tex. Dep't of Protective & Regulatory Servs.*, 138 S.W.3d 564, 567 (Tex. App.—El Paso 2004, no pet.) (adopting approach from *In re Caballero*); *In re E.S.S.*, 131 S.W.3d at 639–40 (discussing *In re Caballero* and holding that incarcerated parent met his burden of production concerning how he would arrange for care of child during his incarceration, and his ex-spouse, who was seeking termination of his parental rights, did not meet her burden of persuasion to establish that proposed arrangement would not satisfy incarcerated parent's duty to child); *see also In re G.C.*, No. 01-12-00935-CV, 2013 WL 816440, at *5 (Tex. App.—Houston [1st Dist.] Mar. 5, 2013, pet. denied) (mem. op.) (following burden-shifting analysis set out in *In re Caballero*).

Father does not challenge the legal sufficiency of the evidence supporting the trial court's finding under subsection (Q). He also concedes that DFPS presented sufficient evidence that he knowingly engaged in criminal conduct that resulted in his conviction. He contends, however, that the evidence is factually insufficient to

support the trial court's finding that his criminal conduct resulted in confinement for not less than two years from the date DFPS filed its termination petition. Father points to his testimony that he would be eligible for parole immediately upon entering TDCJ, that his offense was a non-aggravated offense, and that his behavior had been good. He argues that DFPS presented no other evidence to meet its burden that Father would be incarcerated until January 22, 2018, or two years from the date DFPS filed its original termination petition.

DFPS presented evidence that Father had been convicted of possession of a controlled substance in April 2017 and that, at the time of trial in July 2017, he was serving a four-year sentence for that offense. Father presented his testimony that he would be eligible for parole immediately because, due to his credit for time already served, he had served one quarter of his sentence and his conviction was for a non-aggravated offense. Father also testified that he had had good behavior while incarcerated, which increased his chance of being released on parole. He agreed, however, that his eligibility for parole was not guaranteed and that it was possible that he could end up serving the entire four-year sentence. *See In re H.R.M.* 209 S.W.3d at 109 (stating that parent's testimony concerning his parole eligibility was "barely more than conjecture").

Although the availability of parole is relevant to determining whether a parent will be released from confinement within two years of the filing of the termination

petition, "[m]ere introduction of parole-related evidence, however, does not prevent a factfinder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years." *Id.* Father's own testimony recognized that "[p]arole decisions are inherently speculative" and the decision to grant parole "rests entirely within the parole board's discretion." *See id.* As the Texas Supreme Court has stated,

> If the mere possibility of parole prevents a [factfinder] from ever forming a firm belief or conviction that a parent will remain incarcerated for at least two years, then termination under subsection Q will occur only when the parent has no possibility of parole. By that rationale, the party seeking termination would have to show that there is zero chance of early release.

*Id.* The court stated that this "would impermissibly elevate the burden of proof from clear and convincing to beyond a reasonable doubt." *Id.*

As the factfinder, the trial court had evidence before it that Father was currently serving a four-year sentence for possession of a controlled substance. The court also had evidence before it suggesting the possibility of parole, but Father acknowledged that there was no guarantee that he would be granted parole. Based on this record, we conclude that the trial court could reasonably have formed a firm belief or conviction that Father would remain incarcerated on January 22, 2018, two years from the date DFPS filed its termination petition.[6] *See* TEX. FAM. CODE ANN.

---

[6]     DFPS filed its original petition seeking to terminate Father's parental rights on January 22, 2016. DFPS initially sought termination under subsections (D), (E),

14

§ 161.001(b)(1)(Q); *In re H.R.M.*, 209 S.W.3d at 109; *see also In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.) (stating that two-year time period under subsection (Q) runs from date DFPS files original termination petition, not from date DFPS files amended petition adding allegation seeking termination under (Q)).

Father also argues that the evidence is factually insufficient to support the finding that he is unable to care for H.O. for at least two years from the date DFPS filed the termination petition. Once DFPS has established that a parent's knowing criminal conduct has resulted in their incarceration for more than two years, the burden of production shifts to the parent to "produce some evidence as to how they would provide or arrange to provide care for the child during that period." *In re Caballero*, 53 S.W.3d at 396; *see Hampton*, 138 S.W.3d at 567. Father presented

---

(N), and (O). On June 7, 2017, after Father had been convicted of possession of a controlled substance and sentenced to four years' confinement, DFPS amended its petition to seek termination under subsection (Q). Courts construing subsection (Q) have held that the language of subsection (Q) states "confinement or imprisonment and inability to care for the child for not less than two years from the date of filing *the petition*" and have concluded that the two-year time period should be measured from the date of filing of the *original* petition, even if the original petition does not seek termination under subsection (Q) and the petition is later amended to seek termination under subsection (Q). *In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.— San Antonio 2012, no pet.); *see In re K.G.*, No. 11-12-00130-CV, 2012 WL 3765058, at *3 (Tex. App.—Eastland Aug. 31, 2012, no pet.) (mem. op.). Thus, in this case, the correct date for measuring subsection (Q)'s two-year time period is January 22, 2016, the date DFPS filed its original petition seeking to terminate Father's parental rights, and not June 6, 2017, the date DFPS amended its petition to seek termination specifically under subsection (Q).

no such evidence. He agreed that he was not in a position to care for H.O. while he was incarcerated. He testified that his older child was in the care of a friend in Illinois, but he presented no evidence that this unidentified friend was able and willing to care for H.O. during Father's incarceration. This friend did not testify at trial. Father also testified that his mother had indicated that she was willing to help him raise H.O. after he is released from prison, but he also testified that she told him that she would not raise H.O. on her own. Father presented no evidence that his mother was able and willing to care for H.O. during his incarceration. His mother also did not testify at trial.

Father also points out that H.O.'s foster mother testified that she is in contact with H.O.'s maternal grandmother, who is involved in H.O.'s life. He acknowledges, however, that the record contains no evidence concerning the willingness and the ability of H.O.'s maternal grandmother to care for her during Father's incarceration. Father bears the burden of production to present evidence concerning how he would provide or arrange to provide care for H.O. during his incarceration. *See In re Caballero*, 53 S.W.3d at 396. He did not satisfy this burden of production. Thus, DFPS had no burden to prove that the arrangement proffered by Father would not satisfy his duty to H.O. *See id.* (noting that because record did not contain evidence that father's mother or former fiancée could and would care for

16

his daughter during his incarceration, DFPS "had no burden to disprove the capacity of those people to care for" child).

We conclude that, considering all of the evidence in a neutral light, the trial court could reasonably have formed a firm belief or conviction that Father's knowing criminal conduct resulted in "confinement or imprisonment and inability to care for the child for not less than two years from the date" DFPS filed its termination petition. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(Q); *In re B.M.R.*, 84 S.W.3d at 818–19; *In re Caballero*, 53 S.W.3d at 395–96.

We overrule Father's second issue.[7]

## Conclusion

We affirm the decree of the trial court terminating Father's parental rights to H.O.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Brown, and Lloyd.

---

[7] Because we hold that factually sufficient evidence supported the trial court's finding that termination of Father's parental rights was appropriate under subsection 161.001(b)(1)(Q), we need not address Father's first issue, whether factually sufficient evidence supported the termination of his parental rights under subsection 161.001(b)(1)(E). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (holding that only one predicate finding under section 161.001(b)(1) is necessary to support termination decree when there is also finding that termination is in child's best interest).