**Opinion filed November 16, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00143-CV

_____

## IN THE INTEREST OF I.H., A CHILD

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CV2202030**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the father, R.B., to his one-year-old son, I.H.[1] On appeal, Appellant presents two issues in which he challenges the sufficiency of the evidence to support the trial court's findings. We affirm the trial court's order of termination.

---

[1]The trial court also terminated the parental rights of the mother of the child after she signed an Affidavit of Relinquishment of Parental Rights. The mother did not file an appeal.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001(b) (West Supp. 2023). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U), and that termination is in the best interest of the child. *Id.* at § 161.001(b)(2).

In this case, the trial court found that Appellant knowingly engaged in criminal conduct that resulted in his conviction of an offense, and confinement and inability to care for the child for not less than two years from the date of filing the petition. *See id.* § 161.001(b)(1)(Q). The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the child's best interest. Appellant challenges both the legal and factual sufficiency of the evidence to support the trial court's findings.

In reviewing a legal sufficiency challenge, we must decide whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). "Bearing in mind the required appellate deference to the factfinder, we look at all the evidence in the light most favorable to the finding, assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). In assessing whether the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably

form a firm belief or conviction about the truth of the allegations against the parent. *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513. But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).

*Procedural and Factual Background*

The record shows that the Department of Family and Protective Services (the Department) became involved with I.H. shortly after he was born on December 4, 2021, because he tested positive for methamphetamines. I.H. was placed with relatives, who addressed his ongoing medical concerns such as congenital syphilis, cataracts, and constant checkups for his bone density and other syphilis-related health issues.

The Department filed its petition for protection of the child and for termination of the parents' parental rights on February 7, 2022, and filed an amended petition on

April 19, 2023, adding Appellant's incarceration as a ground for termination. At the time of trial, I.H. was eighteen months old. The case manager testified that, after spending most of his life in his permanent placement, I.H. is "doing really well," and that "he doesn't have a lot of concerns."

Appellant appeared for trial via Zoom while incarcerated in the Jordan Unit of the Texas Department of Criminal Justice. He testified he found out the mother was pregnant with I.H. during his incarceration. Appellant testified that he wanted to be part of I.H.'s life, and that he wrote to the case manager "as much as [he could]." However, the case manager revealed that Appellant had not followed up with her regarding his services, and Appellant was confronted with his lack of correspondence since December of 2022.

Appellant testified that, while his projected release date is November 18, 2027, he will be eligible for parole in November of 2024. The trial court observed that, "[e]ven if [Appellant] were to be paroled by his projected date, that is more than two years from the date the actual petition was filed." The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(Q) of the Texas Family Code and found termination to be in the best interest of the child. This appeal followed.

*Analysis*

*Subsection (Q)*

Pursuant to subsection (Q), the Department had the burden to prove by clear and convincing evidence that Appellant "knowingly engaged in criminal conduct that has resulted in [a] conviction . . . and . . . confinement or imprisonment and inability to care for [I.H.] for not less than two years from the date of filing the petition." FAM. § 161.001(b)(1)(Q). The petition was filed on February 7, 2022; thus, the Department had the burden to prove that Appellant would be confined or

4

imprisoned until at least February 7, 2024. *See id.*; *In re A.V.*, 113 S.W.3d 355, 360–61 (Tex. 2003); *In re K.G.*, No. 11-12-00130-CV, 2012 WL 3765058, at *3 (Tex. App.—Eastland Aug. 31, 2012, no pet.) ("the two-year statutory period in subsection Q" begins on the date the original petition is filed); *see also In re H.O.*, 555 S.W.3d 245, 252 n.6 (Tex. App.—Houston 2018, pet. denied) (collecting cases holding same). Once the Department has established that a parent's knowing criminal conduct resulted in his confinement for more than two years, the burden shifts to the parent to produce some evidence as to how he will arrange to provide care for the child during that period. *Hampton v. Tex. Dep't of Protective & Regulatory Servs.*, 138 S.W.3d 564, 567 (Tex. App.—El Paso 2004, no pet.); *In re Caballero*, 53 S.W.3d 391, 396 (Tex. App.—Amarillo 2001, pet. denied); *see In re H.R.M.*, 209 S.W.3d 105, 110 (Tex. 2006).

"By allowing termination based on an extended prison sentence, subsection (Q) 'allows the State to act in *anticipation* of a parent's abandonment of the child and not just in response to it.'" *In re C.L.E.E.G.*, 639 S.W.3d 696, 698–99 (Tex. 2022) (emphasis in original) (quoting *A.V.*, 113 S.W.3d at 360). While "[p]arole decisions are inherently speculative," the fact that a parent is serving a prison sentence that does not expire for at least two more years "does not automatically meet subsection Q's two-year imprisonment requirement" because "evidence of the availability of parole is relevant." *H.R.M.*, 209 S.W.3d at 108–09. But even though this evidence is *relevant*, the factfinder is free to disregard the parent's parole-related testimony, especially when it constitutes "barely more than conjecture." *C.L.E.E.G.*, 639 S.W3d at 698–99 (internal quotation marks omitted).

Here, it is undisputed that Appellant's projected release date is not until November 18, 2027. Even his parole-eligibility is nearly three years after the Department commenced suit in February of 2022. Viewing all of the evidence in

the light most favorable to the finding (legal sufficiency), we hold that a rational trier of fact could have formed a firm belief or conviction that Appellant knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for I.H. for not less than two years from February 7, 2022—the date that the Department filed its petition. And with respect to factual sufficiency, giving due deference to the trial court's finding and considering the entire record, we conclude that the evidence is such that the trial court could reasonably have formed a firm belief as to the truth of the allegations under subsection Q. *See In re C.A.C., Jr.*, No. 09-10-00477-CV, 2011 WL 1744139, at *3 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.) (upholding trial court's finding under subsection Q and stating that there was no guarantee of release on parole and that a "projected release date, even in the absence of evidence of an adverse disciplinary record, is not evidence that appellant will be released on that date"). Appellant testified that he would not be eligible for parole until nine months after the two-year mark following the filing of the petition. This testimony supports the trial court's finding under subsection Q; the trial court could also have reasonably disregarded his testimony as conjecture. *See C.L.E.E.G.*, 639 S.W.3d at 699; *H.R.M.*, 209 S.W.3d at 109. In fact, it is evidence that Appellant had no possibility of parole until more than two years after the original petition was filed. *See H.R.M.*, 209 S.W.3d at 108–09. Moreover, Appellant did not present any evidence of any arrangements that he had made to provide care for I.H. during his period of incarceration. We conclude that this record contains legally and factually sufficient evidence to support the trial court's finding regarding Appellant's conviction, continued incarceration, and inability to care for I.H. under subsection (Q). Accordingly, we overrule Appellant's first issue.

*Best Interest*

In Appellant's second issue, he asserts that the evidence presented at trial was insufficient to prove by clear and convincing evidence that the termination of his parental rights is in the best interest of I.H.  The trial court, as the trier of fact, is the sole judge of the witnesses' credibility.  *J.F.-G.*, 627 S.W.3d at 312.  We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable.  *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2002).  Giving due deference to the trial court, we hold that, based on the evidence and the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest in I.H.  *See Holley*, 544 S.W.2d at 371–72.

The trial court was presented with ample evidence that Appellant failed to comply with his required services, did not have the ability to care for the child for more than two years from the date the Department filed its original petition, and may have allowed I.H. to remain in the dangerous care of the mother had the Department not intervened.  As set forth above, the Department presented testimony regarding the mother's drug use while pregnant and after I.H. was born.  *See J.W.*, 645 S.W.3d at 749–50 (Texas courts may consider "a parent's willful ignorance of the significant risk that a pregnant mother's drug use poses"); *C.J.O.*, 325 S.W.3d at 266.  Appellant testified that he "didn't even know [the mother] was pregnant until [he] got to County" and that, in 2021, "[w]hen I.H. was born, [he] was already in County."  Appellant received his Family Service Plan in July of 2022, but made no effort to comply.  Appellant acknowledged there were classes available to him in prison, but claimed, "[t]here's not too much I can do while I'm in here."  Appellant likewise offered no suitable alternative for supporting I.H. and I.H.'s physical and emotional well-being.  *See H.R.M.*, 209 S.W.3d at 110; *Hampton*, 138 S.W.3d at 567–68.

Importantly, given the child-centered focus of the best-interest inquiry, we may not discount or minimize the level of permanence I.H. has achieved with his placement caregivers, with whom he has lived since he was eleven days old. *See J.W.*, 645 S.W.3d at 747. His caregivers have met and continue to meet his ongoing medical needs, provide him with a safe, stable home environment, and prioritize his physical and emotional well-being.

Upon considering the record as it relates to Appellant's actions, the emotional and physical danger to the child now and in the future, the emotional and physical needs of the child now and in the future, the parental abilities of those involved, the drug use of the mother and criminal activity of the father, and the plans for the child by the Department, we hold that the evidence is legally and factually sufficient to support the finding that termination of Appellant's parental rights is in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72. On this record, we cannot hold the trial court's findings are not supported by clear and convincing evidence. *See J.W.*, 645 S.W.3d at 741. Accordingly, we overrule Appellant's second issue.

*This Court's Ruling*

We affirm the order of the trial court.


W. BRUCE WILLIAMS
JUSTICE


November 16, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.